## Staunton.

### WADES v. FIGGATT AND ALS.

### Absent, *Moncure*, P.

Real estate is leased to a firm for the term of three years, to commence on the 1st of January, 1876. The lessees purchase from the lessors and take possession of the furniture on the leased premises. On the 19th day of June, 1876, before the rent of that year becomes due, one of the firm executes a deed of trust on the furniture to secure to the lessors the payment of two certain notes and to indemnify the endorser on a certain other note, given for the furniture. The rent for the year 1876 was paid. The rent for 1877 was assigned to a third party, who levied a distress warrant upon the furniture on the leased premises for that year's rent, which was in arrear. The endorser of the note aforesaid, on which judgment had been obtained against the maker and himself, paid off the said note, and filed his bill against the assignee of the note, the trustee in the deed of trust and others, claiming, among other things, that the trust deed constituted a prior lien on the property to the rent for the year 1877, and praying an injunction to stop the sale of the property levied on until the rights of the parties could be determined, and for the appointment of a receiver, which was awarded. HELD :

1. That the lien of the deed of trust was created "after the commencement of the tenancy" under which the distress was made; that the tenancy of the two years (1876 and 1877) was the same.

2. That the payment of the rent for the year 1876, was no discharge of the prior right of the lessors or their assignee to "one year's rent," within the meaning of the statute. Code of 1873, ch. 134, §§ 11, 12.

3. That goods carried on the leased premises and incumbered "after the commencement of the tenancy" are charged with a definite portion of the rent arising under the tenancy during the term, and not with the specific rent of any particular year or period of time.

"One year's rent" and "a year's rent" are used in the statute to denote the *amount* of rent to be distrained for in the one case and to be paid or secured in the other. And it matters not for what year it accrued, or whether it was before or after the creation of the lien, or whether or not other rents may have accrued after the lien was created and been paid by the tenants. As long as any rent arising under the tenancy remains unpaid by the persons liable therefor, as soon as it becomes due the person entitled to it may distrain the goods for an amount not exceeding the rent for a year.

John J. Wade and James Wade, being the owners of the Yellow Sulphur Springs, in Montgomery county, Va., made a contract in the fall of 1875, with Alfred Beckley, Stuart H. Beckley and G. W. McChesney, under the firm name of A. Beckley & Co., to lease to said firm the Springs property for the term of three years with the privilege to the lessees of retaining the property for two years additional. The term was to commence January 1st, 1876; rent for the first year to be $2,500; for the second, $2,750; for the third, $3,000, and $3,000 for the fourth and fifth years, if the lease continued so long. It was further agreed that the Wades should sell the furniture of and upon the springs property at a valuation to be made by disinterested parties on the 15th of October, 1875, and the said firm agreed to pay for the furniture $5,000, on January 1st, 1876, and the residue in equal instalments in 60, 90 and 120 days from that date. The furniture was accordingly valued and possession delivered; a note for $5,168.25, payable January 1st, 1876, was made by said A. Beckley & Co., who also took possession of the springs property and filled the ice houses thereon previous to December 25th, 1875. Thereupon, Alfred Beckley applied to the Wades for an extension of the time for paying for the furniture, upon the ground of his brother's death, and an arrangement was made between the parties whereby the firm was to pay $2,000 on the 1st of February, 1876, $500 by August 15th, 1876, $500 by Sep-

tember 15th, 1876, and $1,000 on 15th of October, 1876, and the residue—viz: $1,168.25—was to be payable January 1st, 1877. The two payments of $500 each and the payment of $1,168.25, were agreed to be secured by deed of trust, and Figgatt become endorser on the note for $1,000, payable October 15th, 1876.

When the furniture of A. Beckley & Co. went upon the leased premises the said property was unencumbered. The firm, on the death of Stuart Beckley, took in Waugh as a partner in his place. The Wades had nothing to do with this arrangement. On the 19th of June, 1876, Alfred Beckley of said firm executed a deed of trust on one-half of said personal property to C. W. Sullivan, to secure to the Wades the said payments of $500 each, and to indemnify Figgatt as endorser on the note for $1,000. The new partner, Waugh, then claimed one-half of the furniture for which he claimed to have paid A. Beckley, and declined to have his half of the furniture encumbered by a deed of trust, and also declined to be a party to secure the Wades.

The rent for 1876 was paid by A. Beckley & Co. The Wades assigned the rent for 1877 to the Farmers National Bank at Salem. In August, 1877, the principal hotel building on the Springs property and much of the furniture was destroyed by fire. Beckley & Co. had no insurance upon the furniture and the loss occasioned their failure. The said bank as assignee as aforesaid levied a distress warrant upon the furniture and personal property of A. Beckley & Co. upon the premises for the rent for 1877, which was unpaid. On the 18th of September, 1877, Figgatt paid off a judgment which had been obtained against Beckley and himself on the $1,000 note and about the same time filed his bill against the Wades, the bank, Beckley, the trustee, and the officer having the distress warrant in hand, and claimed that in the deed of trust he should have been secured in the same class with the Wades, and that the

said deed constituted a prior lien on the property to the rent for the year 1877. An injunction was awarded to stop the sale of the property until the rights of creditors could be determined. Beckley and the Wades answered, and the cause coming on to be heard in December, 1877, the circuit court of the said county held that the deed of trust constituted a lien upon the personal property superior to that of the landlord for rent and directed a sale to be made and accounts to be taken. The cause came on to be heard again in December, 1878, and the court again held that the deed of trust took priority over the landlord's lien, and further held that certain offsets which Beckley had should be applied to the secured debt due to the Wades instead of to the rent. And thereupon the Wades obtained an appeal and *supersedas* from one of the judges of this court.

*T. E. Sullivan,* for the appellants.

*J. H. H. Figgatt,* for the appellees.

Burks, J., delivered the opinion of the court.

By the statute law of this State (Code of 1873, chap. 134), it is provided (§ 11) that "distress for rent may be levied on any goods of the lessee, or his assignee, or under tenant found on the premises, or which may have been removed therefrom not more than thirty days. If the goods of such lessee, assignee, or under tenant, when carried on the premises are subject to a lien, which is valid against his creditors, his interest only in such goods shall be liable to such distress. If any lien be created thereon while they are upon the leased premises, they shall be liable to distress, but for not more than one year's rent, whether it shall have accrued before or after the creation of the lien. No other goods shall be liable to distress than such as are declared to be so liable in this section."

§ 12. "If after the commencement of any tenancy, a lien be obtained or created by deed of trust, mortgage, or otherwise, upon the interest or property in goods on premises leased or rented, of any person liable for the rent, the party having such lien may remove said goods from the premises on the following terms, and not otherwise—that is to say, on the terms of paying to the person entitled to the rent so much as is in arrear, and securing to him so much as is to become due—what is paid or secured not being more altogether than a year's rent in any case." The further provision made for the case in which the goods are taken by an officer under legal process need not be recited.

The deed of trust under which the appellee (Figgatt) claims was executed June 19, 1876, and admitted to record the next day, and the rent distrained for accrued the following year (1877). The goods were the property of a person or persons liable for the rent, and were on the premises at the date of the deed and also of the levy; and the first question is, whether the lien of the deed of trust was created "after the commencement of the tenancy," under which the distress was made—in other words, whether the tenancy of the two years (1876 and 1877) was the same.

We are of opinion that it was. The lease of October, 1875, is not disputed. It is evidenced by writing, signed by the lessors and lessees, and was for a term of three years, to be extended two years, at the option of the lessees, the rent reserved in money to be paid annually in instalments specified, and the furniture on the premises was to be taken by the lessees at valuation to be made by disinterested persons and to be paid for as the agreement prescribes.

The valuation was made, and notes were given by the lessees for the rent accruing the first year (1876), and for the purchase money of the furniture. It is contended that there was no entry upon the premises nor possession taken of the furniture under this lease, and that entry and possession

did not take place until about the 10th day of January, 1876, and then under a new arrangement made on the 5th or 6th of that month.　But this pretension is not supported by the proofs.　The lease was made and the furniture appraised in October preceding.　During the next month, Alfred Beckley (one of the lessees) went upon the premises and filled the ice-houses thereon.　This entry by one was, in legal contemplation, an entry by all of the lessees, and vested the estate in all.　As to the furniture, as soon as it was appraised as agreed upon, the sale was completed and the title passed to the purchasers.　It is true, that it was then locked up for safety in the buildings on the premises, and the lessors had the keys to the buildings, which were not delivered until about the 10th of January following, but it is shown that the keys were held subject to the order of the lessees.　So that, in fact, the purchasers had both the legal title and legal possession from the date of appraisement.

There never was any surrender of this lease, either by agreement of parties or by operation of law.　The contract or arrangement entered into on the 5th or 6th of January, 1876, did not amount to a surrender.　It had reference only to the personal property previously sold, and provided for an extension of the time for payment of the purchase money and security of a part by note with an endorser, and of the residue (except the cash payment) by deed of trust on the property.　And it was distinctly agreed and understood that this arrangement was not to effect the subsisting lease. There was no new lease.　The death of one of the tenants did not operate a surrender, nor did the subsequent taking of the individual bonds of Alfred Beckley for the rent of 1877 have such effect in law, nor is that circumstance alone sufficient to warrant the inference of a surrender by agreement.　The written contract of October, 1875, contained the terms of the lease—specified the rents, the amounts to be paid each year, and times of payment.　These terms were never changed.

The notes taken for the rent of 1876, and the bonds for the rent of 1877, were not in discharge of the written contract, but collateral to it.

As the tenancy of 1876 was the same as that of 1877, and commenced *previous* to the contract of January, 1876, and was not affected by it, it is immaterial whether or no the last mentioned contract operated *per se*, as contended, as an equitable lien on the furniture in favor of the appellee Figgatt. For, if such was the effect, it was nevertheless inferior, as the deed of trust was, to the statutory lien of the lessors for one year's rent. Neither the contract nor the deed operated, or was intended to operate, as a waiver or subordination of this lien.

It may be as well, however, to say that, in our opinion, the evidence does not establish the fact that the indemnity of Mr. Figgatt was provided for in that contract. The bill charges that it was, but it is denied positively by the Wades in their answer, and also by James Wade in his deposition. The answer on this point being responsive, is evidence for the respondents, and, fortified by the deposition, is not overcome by the testimony of the opposing witness Beckley, and the circumstances. Figgatt may have been, and doubtless was, induced to endorse the note by the representations of Beckley. But if he was misled, it was by Beckley, not by the Wades.

At the time (June 19th, 1876) the deed was given, the rent for that year had not become due. It fell due the latter part of the year, and, with the exception of a small amount, was paid by the tenants. Whether this payment was a discharge of the prior right of the lessors or their assignees to "one year's rent," within the meaning of the statute, is the only remaining question of any importance in this cause.

We think it is evident from the sections of the Code already quoted, that the goods carried on the leased prem-

ises and encumbered after the commencement of the tenancy, are charged with a definite portion of the rent arising under the tenancy during the term, and not with the specific rent of any particular year or period of time. "One year's rent" and "a year's rent" are used in the statute to denote the *amount* of rent to be distrained for in the one case and to be paid or secured in the other. The person entitled to the rent is allowed (under the 11th section) to levy a distress on the encumbered property for an amount not exceeding one year's rent, if it is in arrear. It matters not for what year it accrued, or whether it was before or after the creation of the lien, or whether or not other rents may have accrued after the lien was created and been paid by the tenants. As long as any rent arising under the tenancy remains unpaid by the persons liable therefor, as soon as it becomes due, the person entitled to it may distrain the goods for an amount not exceeding the rent for a year. The goods are bound for one year's rent.

The intention is made more clear by the 12th section. The language is, "the party having such lien *may remove* said goods from the premises on the following terms and *not otherwise*—that is to say, on the terms of paying to the person entitled to the rent so much as *is in arrear*, and securing to him so much as *is to become due,* what is paid or secured not being more altogether than *a year's rent* in any case." Manifestly, the "year's rent" here mentioned to be "paid or secured," is such as *is* in arrear *at the time of removal,* or to become due *thereafter.* In ascertaining the rent to be "paid or secured," the reference is to the time of removal, not to the time the lien was created. It is of no consequence, therefore, what rent may have been paid by the tenant after the lien was created. Such payment does not exonerate the property encumbered from prior liability for what is due at the time of removal or to become due thereafter, not exceeding altogether a year's rent.

Wades v. Figgatt and als.

The circuit court, by its decrees, gave priority to the deed of trust. For this error, the decrees will be reversed and the cause remanded for further proceeding, to be had in order to final decree, in conformity with the views expressed in this opinion. The conclusion reached on the main question makes it unnecessary to notice assignments of minor errors.

The decree was as follows:

This cause, which is pending in this court at its place of session at Wytheville, having been fully heard, but not determined at said place of session, this day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the right of the appellants, or of their assignee, the Farmers National Bank of Salem (appellee), to have the personal property or the interest in said property, which was conveyed to the appellee C. W. Sullivan by the deed of trust bearing date June 19, 1876, in the bill and proceedings mentioned, applied to the payment of the rent of the Yellow Sulphur Springs for the year 1877, under the lease of October, 1875 (also in said bill and proceedings mentioned), and especially the rent distrained for by the said bank, is prior and paramount to any lien of the appellee Figgatt and others on said property acquired by said deed of trust, and that the said Figgatt and others, secured by said deed of trust, are not entitled to the benefit of the proceeds of the sales of said property until the rent aforesaid shall have been fully paid; and that the said decrees, so far as they are at all in conflict or inconsistent with the opinion of this court hereinbefore expressed, are erroneous; therefore, it is decreed and ordered, that the said decrees,

so far as they are declared to be erroneous as aforesaid, be severally reversed and annulled, and the residue thereof be affirmed, and that the appellee J. H. H. Figgatt pay to the appellants their costs by them expended in the prosecution of the appeal aforesaid here; and this cause is remanded to the said circuit court for further proceedings to be had therein, in order to final decree, in conformity with the opinion hereinbefore expressed; which is ordered to be certified to the said circuit court of Montgomery county.

DECREE REVERSED AND CAUSE REMANDED.