# CHARLESTON.

ANDERSON *v.* HENRY *et al.*

Submitted June 18, 1898—Decided November 26, 1898.

1. LANDLORD AND TENANT—*Landlord's Lien—Rents—Priority of Liens—Distress Warrant.*

   Section 12, chapter 93, Code 1891, gives a lien for one year's stipulated rent, whether accrued or not, upon the tenant's goods carried on the premises over liens created after the commencement of the tenant's term by deed of trust, mortgage, or otherwise, though no distress warrant has been issued for such rent. (p. 321).

2. DISTRESS WARRANT—*Return.*

   A distress warrant, not being judicial process, need not be made returnable before a justice or court. If made returnable to the justice, it is good. (p. 323).

3. JUSTICE'S DOCKET—*Omission—Proof of Proceeding—Evidence.*

   Where a justice's docket omits to enter a proceeding which should be entered other proper evidence may be admitted to prove the proceeding. (p. 325).

4. CONSTITUTIONAL LAW—*Rents—Distress Warrant.*

   Amendment 14 of the Constitution of the United States does not render our statute law allowing distress warrant for rent unconstitutional and void. (p. 325).

Appeal from Circuit Court, Mercer County.

Bill by J. M. Anderson against Henry & Linkous to administer assets. Hannah Grinberg presented a claim. From a decree allowing only a part thereof, she appeals.

*Reversed.*

JOHNSTON & HALE, for appellant.

JOHN A. DOUGLASS and A. W. REYNOLDS, for appellees.

BRANNON, PRESIDENT:

A mercantile trading firm in the name of Henry & Linkous, by deed of lease dated April 18, 1894, leased of Hannah Grinberg a tenement in the city of Bluefield for a term of three years, beginning that date, for the sum of three thousand six hundred dollars payable in semiannual installments of six hundred dollars in advance, the first payable on the day of its date. On April 26, 1894, Goodman Bros. & Co. sued out an attachment for debt against Henry & Linkous, which was levied upon the stock of goods in the leased tenement, On April 27, 1894, Henry & Linkous made an assignment of said goods for the benefit of creditors. Under an order of court in the attachment case the goods were sold, and the proceeds are to be applied in this suit according to the rights of the parties. On July 23, 1894, Hannah Grinberg sued out from a justice a distress warrant against Henry & Linkous for the six hundred dollars installment of rent payable April 18, 1894, which was levied on said goods while yet on said premises. Afterwards J. M. Anderson, the trustee in said assignment for creditors, brought a suit in the circuit court of Mercer County, in equity, to administer the assets conveyed in said assignment among all parties interested therein; and in this suit a reference to a commissioner was made to convene the creditors of Henry & Linkous, and report their debts and priorities; and Hannah Grinberg presented to the commissioner a claim for one thousand two hundred dollars for one year's rent, and a decree in the case allowed her only six hundred dollars and refused it any priority, but ranked it among the general creditors' debts. From this decree she appealed. Thus the questions we have to decide are: How much is Hannah Grinberg entitled to for rent? Is it a lien because it is rent, and entitled to preference over the general creditors taking under the assignment? I answer that she is entitled, as against these creditors, to one thousand two hundred dollars,—one year's rent,—and that she has priority over said trust creditors. As against the tenants themselves, Hannah Grinberg would be entitled to demand, as it accrued, the entire sum of rent stipulated for the whole term; but as

against creditors of the lessees obtaining liens after the beginning of the term by deed of trust or otherwise against the goods on the premises, her rights are limited to one year's rent by sections 11, 12, chapter 93, Code 1891. Section 11 provides how a distress warrant shall be enforced, saying that it may be levied on goods of the lessee or his assignee on the premises, or removed therefrom not more than thirty days, and provides that liens resting on the goods when taken to the premises shall not defeat a levy of the distress warrant, but only the lessee's interest after paying the prior lien shall be liable to distress, but as to liens created while the goods are on the premises, they shall be liable to distress, but not for more than one year's rent, "whether it shall have accrued before or after the creation of the lien." · The office of section 11 is to say what goods may be taken, and to say how the distress shall affect goods under liens prior and subsequent, limiting it, as to liens arising after the commencement of term, not by amount in dollars, but by the time of accrual, and to the amount stipulated to be paid for one year by the lease. So a distress warrant actually sued out could bind only for one year's rent actually accrued as against subsequent liens. More rent may have become payable, but as to the subsequent liens it could operate only for a year's rent; but its positive effect is to give a levy for one year's rent against subsequent liens, whether the rent accrued before or after the birth of the liens. The section gives no limit as to the tenant. Distress may, as to him, be for rent for a period longer than a year. This section shows a clear intent to give a landlord preference for one year's rent. Such is the law as to rent actually accrued and in arrear, where a distress warrant is out. But suppose a year's rent has not become due, so that there can be no distress. The term is running, the goods on the premises, and, if uninterrupted, the landlord would get his whole rent for the whole period; and the legislature thought that at least one year's rent should be accorded him, but no more, though the term were longer, as that would give the rent debt too much preference over other debts. Section 11 gives it to him where it has accrued; section 12 gives it to him whether accrued or not, because accruing under a

current tenancy.   If the goods should remain on the prem ises, they would, when the rent should be due, be liable for one year's rent under a distress warrant in such case; and if any one under subsequent lien or legal process take the goods from the premises, and frustrate a distress warrant for the rent when due, this section places the landlord where he would be under section 11, giving him right to one year's rent; and that right is manifestly a preference.   He must be paid, before removal under deed of trust, all rent in arrear, and secured what has not fallen due, not exceeding in all one year's rent.   It gives the landlord right of payment and preference out of the goods themselves, and this operates as a lien.   It gives right to the landlord to detain the goods on his premises against a removal under a trust until paid and secured as prescribed, just like an innkeeper or tailor may detaing good suntil payment.   If removed under legal process, it says that the officer, though he may remove them, shall out of the goods, pay rent in arrear, and sell enough on credit to pay the balance when due.   Why all this is not a lien, I fail to see.   It makes no difference whether a distress warrant has been sued out or not, or can be sued out, for want of maturity of the rent.   Indeed, the section contemplated that a distress will not be made, if it does not prohibit it, because it allows the property to be removed from the premises under legal process, and does not contemplate a clash between that process and a distress,—a seizure out of the officer's hands by an officer under distress warrant subsequently issued, whether for rent due at the removal or afterwards becoming due.   It dispenses with such warrant by commanding the officer removing the property under the process to pay the rent out of it.   If levied on by a distress warrant before the levy of other process, I think there could be no removal under section 12, because, under section 11, the officer would complete the enforcement of his warrant; and so it is the office of section 12, without a distress warrant, and whether the rent is past due on not, to create a lien for rent for one year.   This section, of its own force, gives a lien without a distress warrant.   I think this view of the force of section 12 is sustained by *Wades* v. *Figgatt*, 75 Va., 575, holding that

goods carried on leased premises and incumbered after the commencement of the tenancy, "are charged with a definite portion of the rent arising under the tenancy during the term" against the incumbrance, and that is one year's stipulated rent, whether partly or wholly due or not.   The Virginia statute there construed is the same as ours.   Also, by the case of *City of Richmond* v. *Duesberry*, 27 Grat., 210, where the court said: "The landlord is protected by the statute against all deeds of trust, mortgages, and other liens where the lien has been created after the commencement of the tenancy, upon goods on the leased premises which belong to the person liable for the rent, and where there is an existing liability for rent in arrear, or to become due at the time the lien in created."

Another objection made against the rent demand is that the distress warrant for it was made returnable before the justice who issued it.   Now, first, I have shown that section 12 makes this demand a lien without a warrant, for the whole one thousand two hundred dollars, part of it being due when the goods were removed from the premises under the attachment, and part afterwards falling due.   But, second, the distress warrant need have no place of return, because it is not judicial process, and there need be—cannot be— a trial upon it.   When a trial is to be had in a proceeding, process must have a time and place of return that such trial may be had then and there; but not so with a rent warrant.   The form books give this warrant no return place.   Mayo's Guide, 568; 4 Minor, Inst., 1619.   At common law the landlord himself, without warrant, seized his tenant's goods, or some one authorized by him by his warrant.   *Smith* v. *Ambler*, 1 Munf., 596; Tayl. Landl. & Ten. § 579; 2 Tuck., 11; Wood, Landl. & Ten,, 940.   By chapter 61, Acts 1834-35, in Virginia, this right of the lessor to make his own distress was abolished, and he was required to sue out a warrant from a justice upon affidavit.   The act directed how it should be issued, upon what affidavit and to what officer directed, but did not say where or when returnable, but gave it "same force and effect as a like warrant issued by the lessor would have had prior to March 12, 1834," thus merely changing the source of the warrant from the lessor to a justice, leaving

it an *ex parte* proceeding, a mere warrant for the perform-
ance of a purely ministerial act, not a judicial proceeding.
Our Code (chapter 93, section 10) directs about this war-
rant in several details, but does not provide when or where
to be returned.   This section is a law unto itself; and why,
when it does not require a return day or place, and we
know that it is a mere safe substitute for the warrant
which before was issued by the landlord, should we over-
throw a warrant for this cause, and add to the writ a re-
quirement never before, in centuries, required?   In some
states this warrant by statute operates as a declaration in
an action, but "at common law a distress for rent is not the
commencement of a suit.   It is a mandate authorized by
law, to be issued in a proper case, to seize and sell the ten-
ant's goods for the rent, just as if a judgment had been
previously rendered therefor; and it is not returnable into
any court, and, if returned into court, as other attach-
ments, and judgment be rendered in that proceeding, the
judgment will be void."   7 Enc. Pl. & Prac., 20.   If, how-
ever, a place of return must be given, it can only be to the
justice, under Code, c. 41, s. 7.   Mr. Hutchinson makes
the form in his treatise 668 so returnable.

Another reason against so doing is that no hearing upon
the warrant takes place, as it is no suit between parties.
At common law, if the tenant disputed the right of dis-
tress, he gave a replevin bond, and the landlord restored
to the tenant his property, and the tenant brought action
to test the validity of the distress, and, if he succeeded,
retained the property.   The action of replevin was abol-
ished by the Code of 1849, and in its place the well-known
forthcoming bond was applied to a distress warrant, as
well as an execution, the effect of which is to let the tenant
keep the property till a given day; and, if he fails to deliver
it for sale, the landlord cannot again take it, but is driven
to a motion or action on the bond, and in it the tenant can
make "defense on the ground that the distress was for
rent, not due in whole or in part, or was otherwise illegal."
Code 1891, c. 142, ss. 1, 5;. *Allen* v. *Hart,* 18 Grat., 726; 4
Minor, Inst., 139.   If the tenant succeeds, he keeps the
property.   If he fails, he keeps it, but judgment goes on
the bond.   The tenant can only make defense to the dis-

tress warrant by giving a forthcoming bond, and resisting award of execution upon it. He has just as efficient remedy as the common law gave. In fact, he is more favored, because by it his bond bound him to prosecute successfully an action of replevin, but now he has only to defend the other party's suit on the bond, which may never be brought. He could always—can now—bring trespass for wrongful distress, which he could not do, if the distress were a judicial proceeding.

It is urged that this proceeding is in violation of amendment 14 of the Constitution of the United States, guarantying due process of law. The remedy of distress existed before the discoveryof America, and was brought to Virginia by Capt. Smith, and has never ceased; and it seems useless to argue to show that a remedy so long antedating said amendment, a remedy for and against all alike, is not destroyed by it. That amendment is not the "scarecrow" it is often represented to be; it does not overthrow state laws, rights and remedies, to the extent and purposes for which it is often cited. It respects the common law, the statute law, the remedies and procedure existing in the estat at its adoption. Cooley, Const. Lim., 434, note 1. It came to preserve, not to destroy, existing rights. Just as well say that the tax bill seizing a horse for taxes is not due process of law.

As to the objection that the justice's docket showed no entry of the proceeding, that docket only applies to civil or criminal suits before him where he renders judgment, as section 176, c. 50, Code, requiring this docket, says, "It shall be used exclusively for entering his judicial proceedings." As shown above, a distress warrant is not a suit or judicial proceeding. The warrant was filed, and fully proven. In fact, it proves itself. It might be easy to show, if necessary, that, if it ought to be entered in the docket, other evidence could be heard to prove it, where a docket is silent. 12 Am. & Eng. Enc. Law, 502. Code, c. 50, s. 182, makes the docket evidence, but not conclusive, and thus it is not exclusive evidence.

It is said there is no evidence that the first installment of six hundred dollars was not paid. There is evidence in the affidavit made to get the distress warrant,

which affidavit the statute makes evidence for this purpose. But no evidence is required. The undisputed lease under seal creates the debt, saying the six hundred dollars is to be paid on the 18th day of April, 1894, but not acknowledging its receipt. Besides, when once a debt exists, he who asserts payment must prove it; and there is not a scintilla of evidence to prove it. The decree is reversed and the cause remanded, with direction to enter a decree allowing Hannah Grinberg one thousand two hundred dollars with interest on six hundred dollars of it from 18th of April, 1894, and six hundred dollars of it from 18th of October, 1894, and to provide for its payment as a preferred demand over other debts out of the fund arising from said stock of goods.

*Reversed.*