# Richmond

## UNITED STATES OF AMERICA, ET AL. V. WADDILL, HOLLAND & FLINN, INCORPORATED, ET AL.

January 24, 1944.

Record No. 2733.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*F. S. Tavenner, Jr.,* and *Henry T. Clement,* for the appellants.

*Abram P. Staples, Attorney General, Kenneth C. Patty, Assistant Attorney General, Crews & Clement* and *E. Walton Brown,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On June 19, 1941, Oeland R. Roman, who operated a restaurant in the city of Danville, executed and delivered to Earle Garrett, as trustee, a deed of assignment for the benefit of the assignor's creditors. The deed conveyed to the trustee all of the personal property and fixtures which had been used by the assignor in the conduct of the business and which were then located on the premises. It authorized the trustee to sell such personal property and out of the proceeds thereof to "pay as preferred claims such creditors as are given a lien or preference by law, or those having a valid lien upon the property conveyed or some part thereof".

On July 1, 1941, Waddill, Holland & Flinn, Incorporated, the owner of the premises which had been occupied by the assignor, under a written lease for a five-year term, commencing January 1, 1937, and reserving a rental of $250 per month, levied a distress warrant on the assignor's personal property on the premises for accrued rent of $850 for three and two-fifths months. On the same day it levied an attachment on the same personal property for future instalments of rent for two and three-fifths months in the sum of $650.

On July 2, 1941, the Collector of Taxes for the city of Danville distrained the personal property on the premises for personal property taxes assessed thereon for the years 1939, 1940, and 1941, amounting in all to the sum of $222.31.

No sale was held under the distress warrant, attachment, or distraint for taxes, but pursuant to the terms of the deed

of trust, the trustee sold the property of the assignor for the sum of $1,680.80, which is conceded to have been the fair value thereof. He then filed in the court below a bill in chancery asking the guidance of the court in determining the priority of payment of the following claims filed with him:

(1) The city of Danville, for the stated taxes due, in the sum of $222.31;

(2) Waddill, Holland & Flinn, Incorporated, for six months' rent due and to become due, amounting to $1,500;

(3) The United States, for debts due it by the assignor, amounting to $1,559.63, with interest;

(4) The Virginia Unemployment Compensation Commission, for unemployment compensation taxes due it by the assignor, in the sum of $66.38.

The lower court held that the creditors mentioned were entitled to priority in the order listed, and from a decree distributing the fund in that manner, the United States has appealed. It claims that it is entitled to priority of payment of its claim before those of any of the creditors mentioned.

The Virginia Unemployment Compensation Commission assigns cross-error. While it admits that its claim is subordinate to that of the United States, it contends that it should be paid ahead of the city of Danville and Waddill, Holland & Flinn, Incorporated.

Waddill Holland & Flinn, Incorporated, has filed no cross-assignment of error to the action in subordinating its claim to that of the city of Danville. Hence, the main question before us is whether the lower court was correct in holding that the rent claim of $1,500 was entitled to priority over that of the United States. If that holding is correct, then, admittedly, after the allowance of reasonable costs of administration, the fund will be exhausted. In that case neither the United States nor the Virginia Unemployment Compensation Commission will be interested in the relative priority of the claims of the city of Danville and those of the landlord.

The basis for the contention of the United States is section 3466 of the Revised Statutes (31 U. S. C. A., Sec. 191), which is copied in the margin.[1]

■ It is settled that this statute creates no lien upon the debtor's property in favor of the United States. It merely confers upon the Government a right of priority of payment out of such property in the hands of the debtor's assignees, or their representatives, under the conditions specified in the statute. *United States* v. *Oklahoma*, 261 U. S. 253, 259, 43 S. Ct. 295, 67 L. Ed. 638.

■ ■ The right of the United States, if any, to priority, became fixed at the date of the delivery of the deed of assignment. *United States* v. *Oklahoma, supra.* Thereafter none of the other creditors could obtain preference over the United States. If not perferred at that time, their claims are subordinate to those of the Government. *New York* v. *Maclay*, 288 U. S. 290, 292, 53 S. Ct. 323, 324, 77 L. Ed. 754. Hence, the rights of the landlord and the city of Danville must be determined irrespective of the attachment and distraint levied on the debtor's property after the delivery of the deed of assignment.

The landlord does not dispute this principle, but contends that before the right of priority of the United States accrued under U. S. Rev. Stat., Sec. 3466, by the delivery of the deed of assignment, it (the landlord), by virtue of Virginia Code, Section 5524, had acquired a fixed and specific lien upon the property located on the premises for six months' rent, and that, therefore, its claim is superior to that of the Government.

---

[1] U. S. Rev. Stat., section 3466. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

There are expressions in recent opinions of the Supreme Court, the final arbiter in the interpretation of an Act of Congress, which support the view that the rights of a creditor who holds a "specified perfected lien" on the property of an insolvent, at the time the rights of the Government attach, under Rev. Stat., Sec. 3466, are superior to those of the Government.

In *United States* v. *Knott*, 298 U. S. 544, 549, 550, 56 S. Ct. 902, 905, 80 L. Ed. 1321, 104 A. L. R. 741, speaking through Mr. Justice Brandeis, the court said: "* * * But it is settled that an *inchoate lien* is not enough to defeat the priority. *United States* v. *Oklahoma*, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; *Spokane County* v. *United States*, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621; *New York* v. *Maclay*, 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754. Unless the law of Florida effected, at least as early as the date of insolvency, either a transfer of title from the company, or a *specific perfected lien* in favor of the Florida creditors, the United States is entitled to priority." (Italics supplied.)

In that case it was held (298 U. S., at pages 550, 551, 56 S. Ct., at page 905) that the deposit by a foreign surety company of securities with the State Treasurer, as a condition precedent to its right to do business in the State of Florida, while creating a "trust fund" for the benefit of Florida creditors, constituted "an inchoate general lien" for such purpose, and lacked "the characteristics of a specific perfected lien which alone bars the priority of the United States." See also, *United States* v. *Texas*, 314 U. S. 480, 62 S. Ct. 350, 86 L. Ed. 356.

It is true, as argued by the Government, that the Supreme Court has reserved the question as to whether the holder of a specific and perfected lien, without a "change of title or possession," is entitled to priority over the United States Government in the distribution of the estate of an insolvent. See *New York* v. *Maclay, supra* (288 U. S., at pages 293, 294, 53 S. Ct., at page 324); *United States* v. *Texas, supra* (314 U. S., at page 488, 62 S. Ct., at page 354).

 However, it seems to us that if before the Government's right of priority attaches, a creditor acquires a specific and perfected lien on the property of the insolvent debtor, the estate of the latter is, for all practical purposes, diminished to the extent of the claim secured by such lien, and the Government's right attaches only to the residue. See *Brent* v. *Bank of Washington*, 10 Pet. (35 U. S.) 596, 611, 9 L. Ed. 547.

In *Ernst* v. *Guarantee Millwork*, 200 Wash. 195, 93 P. (2d) 404, it was held that where the statute gave the county a "specific lien" on personal property for taxes assessed thereon, such claim was prior to the claim of the United States when the taxpayer thereafter became insolvent.

In *Spokane County* v. *United States, supra* (279 U. S., at page 94, 49 S. Ct., at page 325), Mr. Chief Justice Taft said that whether the lien of State taxes on property of the taxpayer was "specific", is properly "a State question." See also, *United States* v. *Knott, supra* (298 U. S., at page 548, 56 S. Ct., at page 904).

The main question for decision, then, is whether, under the law of Virginia, the landlord is given a specific and perfected lien for six months' rent accrued and to accrue, or whether he is given an inchoate lien which becomes specific and perfected only after the levy of a distress warrant or attachment.

 At common law the landlord had no lien upon any property of his tenant as security for rent prior to the levy of a distress warrant. 32 Am. Jur., Landlord and Tenant, Sec. 564, p. 461, and authorities there cited. Now the statutes of many States give the landlord a lien for rent upon the property of his tenant and, in case of agricultural lands, upon the crops raised on the demised premises. 32 Am. Jur., Landlord and Tenant, Sec. 575, p. 468.

While there are dicta on the subject, the precise question as to whether such a lien is given by the Virginia statutes,

Code, Sections 5519, 5523 and 5524, which are copied in the margin,[2] has not been heretofore presented by this court.

In *Richmond* v. *Duesberry*, 27 Gratt. (68 Va.) 210, 213, 214, this court in speaking of sections 11 and 12 of the Code of 1860, ch. 138 (now Code, Sections 5523 and 5524), said:

"From these sections, it is plain that the intention of the legislature was to secure one year's rent to a landlord against all liens created by the tenant after the lease has commenced.

---

[2] Section 5519. *"Remedy for rent and for use and occupation.—*Rent of every kind may be recovered by distress or action. A landlord may also, by action, recover (where the agreement is not by deed) a reasonable satisfaction for the use and occupation of lands; * * * ."

Section 5523. *"On what goods levied.—*The distress may be levied on any goods of the lessee, or his assignee, or undertenant, found on the premises, or which may have been removed therefrom not more than thirty days. A levy within such thirty days shall have like effect as if the goods levied on had not been removed from the leased premises. If the goods of such lessee, assignee, or undertenant, when carried on the premises, are subject to a lien, which is valid against his creditors, his interest only in such goods shall be liable to such distress. If any lien be created thereon while they are upon the leased premises, or within thirty days thereafter, they shall be liable to distress, but for not more than six months' rent if the premises are in a city or town, * * * whether it shall have accrued before or after the creation of the lien. * * * ." (As amended by Acts 1922, ch. 495, p. 863; Acts 1932, ch. 357, p. 696.)

Section 5524. *"When goods not to be removed without paying six months' rent; lien for taxes, levies, and militia fines not affected.—*If, after, the commencement of any tenancy, a lien be obtained or created by deed of trust, mortgage, or otherwise, upon the interest or property in goods on premises leased or rented, of any person liable for the rent, or the said goods be sold, the party having such lien, or the purchaser of such goods, may remove them from the premises on the following terms, and not otherwise, that is to say: On the terms of paying to the person entitled to the rent so much as is in arrear, and securing to him so much as is to become due, what is so paid or secured not being more altogether than six months' rent if the premises are in a city or town, * * * . If the goods be taken under legal process, the officer executing it shall, out of the proceeds of the goods, make such payment of what is in arrear; and as to what is to become due, he shall sell a sufficient portion of the goods on a credit till then, taking from the purchasers bonds, with good security, payable to the person so entitled, and delivering such bonds to him. If the goods be not taken under legal process, such payment and security shall be made and given before their removal. Neither this nor the preceding section shall affect any lien for taxes, levies, or militia fines. * * * " (As amended by Acts 1922, ch. 495, p. 863; Acts 1932, ch. 357, p. 696.)

"The landlord is protected by the statute against all deeds of trust, mortgages, and other liens, where the lien has been created *after* the commencement of the *tenancy*, upon goods on the leased premises which belong to a person *liable for rent*, and where there is an existing liability for rent in arrear, or to become due at the time the lien is created."

In *Wades* v. *Figgatt*, 75 Va. 575, 581, 582, it was said that goods of the tenant carried on the leased premises and encumbered after the commencement of the tenancy, "are bound for one year's rent."

In *Allen* v. *Parkey*, 154 Va. 739, 748, 149 S. E. 615, 154 S. E. 919, it was held that a trustee in a deed of assignment from the tenant took subject to the provisions of Code, Section 5524, and was bound to pay the landlord six months' rent as a preferred charge, although no distress warrant had issued therefor.

These expressions, and the holding in *Allen* v. *Parkey*, *supra*, would indicate that the landlord has a fixed specific lien on the tenant's goods on the leased premises irrespective of the levy of a distress warrant.

On the other hand, in *American Exch. Bank* v. *Goodlee Realty Corp.*, 135 Va. 204, 216, 116 S. E. 505, it was said that, "accurately speaking, neither section 5524 nor section 5523 of the present Code * * * gives the landlord any lien for rent", and that until his right has been perfected by the levy of a distress warrant, the landlord's lien is merely "inchoate."[3]

But that statement was not necessary to the decision of the case. There the American Exchange Bank, subsequent to the commencement of the tenancy, acquired a lien on

---

[3] This statement is supported by the cited text in Burks' Pleading and Practice, 1st Ed., section 13, p. 14. The text in the 2d Ed., section 379, pp. 736, 737, and that in the 3d Ed., section 381, pp. 712-714, omits this statement. In a footnote, the 3d Ed., at page 713, says: "It is believed that the ruling in the American Exchange Bank case is correct", but *Bradford* v. *Graham*, 287 F. 686, and *Thomas Co.* v. *Lewis, etc., Co.*, 79 W. Va. 138, 141, 90 S. E. 816, 818, are cited as being to the contrary.

certain goods belonging to the tenant and removed them from the leased premises without paying six months' rent. The court held (135 Va., at page 218) that such removal, in violation of Code, section 5524, was a wrong to the estate of the landlord, for which the latter might maintain an action in tort against the person removing the goods, and recover a personal judgment against him for the value of the goods removed, if not in excess of the amount of one year's rent in arrear, and, if the goods removed were in excess of that amount, then for the amount of the rent in arrear, for one year, and costs. No question as to whether the landlord had a lien on the goods on the leased premises, irrespective of distress, was there involved.

In *In re Wynne*, 30 Fed. Cas. 752, 762, Case No. 18,117, Mr. Chief Justice Chase, sitting on appeal in the United States Circuit Court, reviewed the Virginia statute fully and held that a lien existed thereunder for not exceeding one year's rent, "independently of any proceeding by distress or attachment", which, he said, are merely remedies for enforcing the lien. H said:

" * * * Liens are [of] various descriptions, and may be enforced in different ways; but we think it sufficient to say here, what seems to us well warranted in principle and authority, that whenever the law gives the creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of this debt. And we think that a lien of this sort is given by the 12th section of title 41, chapter 138, of the Revised Code of Virginia, adopted in 1860 (now Code, section 5524). * * *

"We can not doubt that this statute creates a lien in favor of the landlord, and a lien of a high and peculiar character, * * *

" * * * Would it not be trifling with the plain sense of words to say that there is a lien under the trust deed and a lien under the execution, but the claim which by law is

made superior to either as a charge upon the goods is no lien?"

In *Bradford* v. *Graham*, 287 F. 686, 689, 690, the Circuit Court of Appeals, speaking through Judge Waddill, adopted the reasoning of *In re Wynne, supra,* and held that Code, sections 5523 and 5524, give the landlord a lien for rent in arrears and to become due for not exceeding one year (now six months) on the property of the tenant on the leased premises, or that which has been removed therefrom within thirty days, without distraint or attachment being made therefor.

Statutes paralleling Virginia Code, sections 5523 and 5524, are found in Michie's Code of West Virginia (1937), sections 3663 and 3668. The highest court of that State, in construing these statutes, has repeatedly held that the landlord has a fixed and specific lien upon the property of the tenant while upon the leased premises, and not merely an inchoate lien.

In *Anderson* v. *Henry*, 45 W. Va. 319, 31 S. E. 998, 999, it is said that the statute "gives the landlord right of payment and preference out of the goods themselves, and this operates as a lien. It gives right to the landlord to detain the goods on his premises against a removal of trust until paid and secured as prescribed, just like an innkeeper or tailor may retain goods until payment. If removed under legal process, it says that the officer, though he may remove them, shall, out of the goods, pay rent in arrear, and sell enough on credit to pay the balance when due. Why all this is not a lien, I fail to see. It makes no difference whether a distress warrant has been sued out or not, or can be sued out, for want of maturity of the rent." The court concludes (31 S. E., at page 1000) that section 12, ch. 93, of the Code of 1891 (now Michie's Code of West Virginia (1937), section 3668, which corresponds to Virginia Code, section 5524), "of its own force gives a lien without a distress warrant."

It is significant to note that the West Virginia court supports its reasoning by citing *Wades* v. *Figgatt, supra,*

and *Richmond* v. *Duesberry, supra,* and points out that the Virginia and West Virginia statutes are substantially the same.

The holding that the landlord has a fixed and specific lien, and not merely an inchoate lien, irrespective of the levy of a distress warrant, has been reaffirmed by the West Virginia court in *Huffard* v. *Akers,* 52 W. Va. 21, 43 S. E. 124, 127; *Thomas Co.* v. *Lewis, etc., Co.,* 79 W. Va. 138, 141, 90 S. E. 816, 818.

We may observe in passing that in 18 Am. & Eng. Enc. of Law, Landlord and Tenant, p. 332, note 5, and in 36 Corpus Juris, Landlord and Tenant, section 1447, p. 487, note 53, and in 9 A. L. R. 300, Virginia and West Virginia are classed among those States whose statutes give the landlord a lien on the property of the tenant.

We agree with the reasoning of Mr. Chief Justice Chase in *In re Wynne, supra,* and that of the West Virginia court, that the Virginia statutes, by clear implication, give the landlord a lien which is fixed and specific, and not one which is merely inchoate, and that such a lien exists independent of the right of distress or attachment, which are merely remedies for enforcing it.

It follows from what we have said that the lower court was right in holding that the claim of the landlord, Waddill, Holland & Flinn, Incorporated, was entitled to priority of payment over that of the United States.

We are further of opinion that the lower court correctly held that Code, section 5524, subordinated the landlord's lien to the lien of the city of Danville for its personal property taxes assessed against the specific chattels on the leased premises. That the city has a lien therefor is settled in this State. *Chambers* v. *Higgins,* 169 Va. 345, 351, 193 S. E. 531, 533; *Drewry* v. *Baugh & Sons,* 150 Va. 394, 401, 143 S. E. 713.

Whether the city's lien for taxes is such a specific lien as would entitle it to priority of payment over the claim of the United States, if no rent claim were here involved, we need not decide. *Cf. Spokane County* v. *United States,*

*supra; Ernst* v. *Guarantee Millwork, supra.* Since the rent claim takes priority over that of the United States, and completely exhausts the fund, the United States has no concern in the relative priority of the claim of the city and that of the landlord.

The Virginia Unemployment Compensation Commission contends that it is entitled to priority of payment over the claim of the landlord by virtue of section 14(c) of the Virginia Unemployment Compensation Act (Acts 1936-7, Ex. Sess., ch. 1, p. 3, as amended by Acts 1940, ch. 334, p. 550; Acts 1942, ch. 317, p. 446; Michie's Code of 1942, sec. 1887(106),(c) ), which makes payroll taxes a lien against an employer's assets. However, that section expressly preserves the priority of "any mortgage, deed of trust or other lien duly perfected prior to the date the contributions or any part thereof first accrued".

We are of opinion that the lien of the landlord is a "lien duly perfected" within the meaning of this section. It is settled that the landlord's lien relates back to the beginning of the tenancy. *Wades* v. *Figgatt, supra; Pepsi-Cola Bottling Co.* v. *Indian Rock Bottling Co.,* 98 W. Va. 269, 126 S. E. 715; *Dingess-Rum Coal Co.* v. *Draper Eagle Coal Co.,* 108 W. Va. 37, 150 S. E. 228; 32 Am. Jur., Landlord and Tenant, sec. 579, p. 470. Therefore it was perfected prior to the accrual of the Commission's claim for contributions.

What we have said in disposing of the claim of the United States applies here in consideration of the claim of the Unemployment Compensation Commission. Since the rent claim takes priority over that of the Unemployment Compensation Commission, and completely exhausts the fund, the Unemployment Compensation Commission is not concerned with the relative priority of the claims of the landlord and the city of Danville.

In our opinion the decree complained of is plainly right, and accordingly it is

*Affirmed.*