C. V. Spratley, Jr., U. S. Atty., Norfolk, Va., Clarence J. Grogan, Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Fine, Fine, Legum & Schwan, Norfolk, Va., for Lomin Co.

Maurice Steingold, Norfolk, Va., for Char-Ben and Elson.

Melvin J. Radin, Norfolk, Va., for Elson.

Russo, White & Katherman, Norfolk, Va., for Norman Hecht.

No appearance for Melchiorre.

**UNITED STATES of America,**
**Plaintiff,**

v.

**Ignazio MELCHIORRE, formerly t/a Italian-American Grocery Co., Lomin Company, Inc., Char-Ben Corp. and Ester Elson, Defendants.**

**Civ. A. No. 5431.**

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 16, 1968.

### MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

Defendant landlords, Lomin Company, Inc., Char-Ben Corp., and Ester Elson, are competing for the fund presently in the possession of the defendant, Norman Hecht, Trustee, alleging that their claim to this fund is senior and prior to that of the federal tax liens asserted here by the Government. In response to requests for admissions filed and served in this case, defendants have admitted the following:

1. That the defendant, Ignazio Melchiorre, t/a Italian-American Grocery Company, was a tenant of the aforesaid defendants by virtue of a written lease calling for the payment of rent in the sum of $200.00 per month.

2. That the defendant taxpayer, Ignazio Melchiorre, defaulted in the payment of his rent, and the defendant landlords obtained a warrant of distress on June 21, 1963. The warrant of distress was in the sum of $600.00 covering rent at the rate of $200.00 per month for the months of April, May and June of 1963, and it was issued by a justice of the peace.

3. That the defendant, Ignazio Melchiorre, made an assignment for the benefit of his creditors on August 8, 1963.

4. That as a result of this assignment and the sale of Ignazio Melchiorre's stock in trade and fixtures by the defendant, Norman Hecht, Trustee, the said trustee is holding the sum of $1,093.48, subject to certain administrative expenses.

The District Director of Internal Revenue made an assessment on June 20, 1963 against the defendant, Ignazio Melchiorre, t/a Italian-American Grocery Co., for withholding taxes, penalties and interest for the four quarters of 1962 in the sum of $3,319.52, and for the first quarter of 1963 in the sum of $812.00. The assessment was based on the filing of no payment returns by the defendant taxpayer. On June 21, 1963 notice of this assessment was given to the taxpayer and demand was made for payment. There is still due and owing to the United States by Ignazio Melchiorre by virtue of the aforesaid assessment the sum of $3,909.91, plus statutory interest. A notice of federal tax lien covering the aforesaid assessment was filed with the Clerk of the Corporation Court in Norfolk, Virginia, on June 24, 1963. On July 5, 1963 and August 2, 1963 the District Director made assessments against Ignazio Melchiorre in the respective sums of $179.21 and $319.25, and duly gave the taxpayer notice of the assessments making demands for payment. These sums, plus statutory interest thereon, are still due and owing the United States.

The plaintiff, United States of America, moves this Court for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The issue before the Court is whether or not § 3466 of the Revised Statutes, 31 U.S.C. § 191, gives priority to a tax lien of the United States over a landlord's lien as a matter of law where the District Director of Internal Revenue made the assessment on June 20, 1963, and the defendant landlords obtained a warrant of distress on June 21, 1963. An affidavit as to the insolvency of the taxpayer on August 8, 1963 has been filed and is not controverted.

This issue is substantially the same as that in United States v. Waddill, Holland, & Flinn, Inc. (1945), 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (182 Va. 351, 28 S.E.2d 741). In this case Mrs. Oeland Roman operated a restaurant in Danville, Virginia, on premises leased from defendant landlords Waddill, Holland & Flinn, Inc. On June 19, 1941, she executed a general deed of assignment to a trustee for the benefit of creditors specifically conveying all personal property, fixtures and equipment used by her in the conduct of the restaurant and located on the premises. The property remained on the premises until sold by the trustee on July 12, 1941. After deduction of appropriate administrative expenses, a sum of $1,407.29 remained. Four creditors claimed priority of payment from the fund, two of which are not relevant to the issue under consideration.

1. The United States claimed the sum of $1,559.63, plus interest, representing certain unpaid federal unemployment compensation taxes and a debt arising out of a Federal Housing Administration transaction.

2. The Virginia Unemployment Compensation Commission made a tax claim which was conceded to be subordinate to 1 above and hence not considered.

3. The City of Danville claimed $300.55 as personal property taxes still unpaid. On July 2, 1941, the city dis-

trained on all of the property on the leased premises.

4. The defendant landlord Waddill, Holland & Flinn, Inc. claimed $1,500.00 for six months' rent due and to become due. On July 1, 1941, twelve days after the deed of assignment was executed, the defendant landlords obtained a distress warrant for 3⅗ months' past due rent and an attachment for 2⅗ months' future installments of rent. On the same day the firm levied the warrant and attachment on the assignor's property located on the leased premises.

The trustee under the deed of assignment filed a petition in the Corporation Court of Danville, reciting the various claims and requesting advice as to the proper distribution. That court held that the landlord was entitled to priority in payment over the claims of the United States and the Virginia Unemployment Compensation Commission, but that its claim was subordinate to that of the City of Danville. On appeal by the United States, the Supreme Court of Appeals of Virginia affirmed this order of distribution. On certiorari the Supreme Court reversed the holding of the lower court.

Justice Murphy delivered the opinion of the court:

"Section 3466 of the Revised Statutes provides in pertinent part that 'the debts due to the United States shall be first satisfied' whenever any person indebted to the United States is insolvent or, 'not having sufficient property to pay all his debts, makes a voluntary assignment thereof.' We hold that this statute clearly subordinates the claims of both the landlord and the municipality to that of the United States. The judgment of the court below must accordingly be reversed.

"The words of § 3466 are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States. Thelusson v. Smith, 2

Wheat. 396, 425 [4 L.Ed. 271], United States v. [State of] Texas [314 U.S. 480, 484, 62 S.Ct. 350, 352, 86 L.Ed. 356]. But this Court in the past has recognized that certain exceptions could be read into this statute. The question has not been expressly decided, however, as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment. Conard v. Atlantic Insurance Co., 1 Pet. 386, 441, 444 [7 L.Ed. 189]; Brent v. Bank of Washington, 10 Pet. 596, 611, 612, [9 L.Ed. 547], Spokane County v. United States, 279 U.S. 80, 95, [49 S.Ct. 321, 325, 73 L.Ed. 621] United States v. Knott, 298 U.S. 544, 551, [56 S.Ct. 902, 905, 80 L.Ed. 1321] [People of State of] New York v. Maclay, [288 U.S. 290, 293, 294, 53 S.Ct. 323, 324, 77 L.Ed. 754]; United States v. [State of] Texas, [314 U.S. 480, 485, 486, 62 S.Ct. 350, 352, 353, 86 L.Ed. 356]. It is within this suggested exception that the landlord and the municipality seek to bring themselves. Once again, however, we do not reach a decision as to whether such an exception is permissible for we do not believe that the asserted liens of the landlord and the municipality were sufficiently specific and perfected on the date of the voluntary assignment to cast any serious doubt on the priority of the claim of the United States.

"The landlord rests its claim upon certain provisions of the Virginia Code of 1936. Sections 5519[1] and 5523[2] authorize a landlord to levy distress for six months' rent upon 'any goods of the lessee * * * found on the premises, or which may have been removed therefrom not more than thirty days * * * for not more than six months' rent if the premises are in a city or town.' Section 5524[3] provides that the goods of the tenant on leased premises in a city or town may not be removed by a lienor or purchaser, nor taken under legal process, save 'on the terms of paying to the person

---

1. § 5519 is now Va.Code § 55–227 (1950).

2. § 5523 is now Va.Code § 55–231 (1950).

3. § 5524 is now Va.Code § 55–233 (1950).

entitled to the rent so much as is in arrear, and securing to him so much as is to become due,' not to exceed six months' rent. Other sections provide for officers making the distress under warrant from a justice, founded upon an affidavit of the person claiming the rent, and for such officers to make returns of their actions and proceedings upon such warrants. Provisions are also made for legal proceedings looking toward the possession and sale of the property to satisfy the debt.

"The Supreme Court of Appeals of Virginia has here held that these sections 'give the landlord a lien which is fixed and specific, and not one which is merely inchoate, and that such a lien exists independently of the right of distress or attachment, which are merely remedies for enforcing it.' 182 Va. at 363, 28 S.E. 2d at 746. It has also held that such a lien 'relates back to the beginning of the tenancy.' 182 Va. at 364, 28 S.E.2d at 746, thus giving it force and effect on date of the voluntary assignment. These interpretations of the Virginia statutes, as propositions of state law, are binding. But it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority given the claims of the United States by an act of Congress. If the priority of the United States is ever to be displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supercede a long-standing Congressional declaration of priority. Field v. United States, 9 Pet. 182, 201, [9 L.Ed. 94]; United States v. [State of] Oklahoma, 261 U.S. 253, 260, [43 S. Ct. 295, 297, 67 L.Ed. 638]; Spokane County v. United States, [279 U.S.] supra, 90 [49 S.Ct. 321, 323, 73 L.Ed. 621].

"Tested by its legal effect under Virginia law, the landlord's lien in this instance appeared to serve 'merely as a caveat of a more perfect lien to come.' [People of State of] New York v. Maclay, supra, 288 U.S. 294 [53 S.Ct. 323, 324, 77 L.Ed. 754]. As of the date of the voluntary assignment, it was neither specific nor perfected. It gave the landlord only a general power over unspecified property rather than an actual interest in a definitive portion or portions thereof.

"Specificity was clearly lacking as to the lien on June 19, 1941, the date of the assignment. On that day it was still uncertain whether the landlord would ever assert and insist upon its statutory lien. Until that was done it was impossible to determine the particular six months' rent, or a proportion thereof, upon which the lien was based. The lien did not relate to any particular six months' rent but could attach only for the rent which might be due at or after the time when the lien was asserted. Wades v. Figgatt, 75 Va. 575, 582. And if it were asserted at a time when the tenancy had terminated or would terminate within six months of the date to which rent had been fully paid, the lien could only cover less than six months' rent. Conceivably the amount of rent due or to become due was uncertain on the day of the assignment. The landlord may have been mistaken as to the rental rate or as to payments previously made and the tenant may have been entitled to a set-off. See Allen v. Hart, 18 Gratt. [59 Va.] 722, 737; Hancock v. Whitehall Tobacco Co., 100 Va. 443, 447, 41 S.E. 860. Moreover, while the lien legally attached to all such property as might be on the premises when the lien was asserted or within thirty days prior to distraint, the landlord could distrain goods only to the extent necessary to satisfy the rent justly believed to be due, the tenant possessing an action for damages for excessive distraint. Va.Code, § 5783 [4]; Fishburne

4. Va.Code § 5783 is now Va.Code § 8-651 (1950).

v. Engledove, 91 Va. 548, 22 S.E. 354; Gurfein v. Howell, 142 Va. 197, 128 S.E. 644. Thus until the extent of the lien was made known by the landlord and until some steps had been taken to distrain or attach sufficient property to satisfy the lien, it was impossible to specify the goods actually and properly subject to the lien. Some of the goods on the premises may have been subject to mortgages or liens which attached before the goods were brought on the premises, in which case the landlord's lien would be inferior. Va.Code, § 5523.[5] And if other goods were removed after the date of the voluntary assignment but more than thirty days before the distraint or attachment, the right of distraint and attachment as to those goods would disappear. Va.Code § 5523[6]; Dime Deposit [& Discount] Bank, [etc.] v. Wescott, 113 Va. 567, 75 S.E. 179. These factors compel the conclusion that neither the rent secured by the lien nor the property subject to the lien was sufficiently specific and ascertainable on the day of the voluntary assignment to fall within the terms of the suggested exception.

"Nor was the statutory lien perfected as a matter of actual fact, regardless of how complete it may have been as a matter of state law. The tenant was divested of neither title nor possession by the silent existence of the landlord's statutory lien on the date of the assignment. Only after the lien was actually asserted and an attachment or a distraint leveled, enabling the landlord to satisfy his claim out of the seized goods, could it be argued that such goods severed themselves from the general and free assets of the tenant from which the claims of the United States were entitled to priority of payment. Prior to that time, the lien operated to do no more than prevent the removal of goods from the premises by certain classes of persons, Va.Code § 5524[7], and give the landlord priority in distribution under state law provided that the goods remained on the premises. Such a potential, inchoate lien could not disturb the clear command of § 3466 of the Revised Statutes. Something more than a 'caveat of a more perfect lien to come' was necessary."

The only factual difference between the instant case and the *Waddill Co.* case is that in *Waddill* the landlord obtained a distress warrant and levied thereunder *after* the execution of the assignment for the benefit of creditors, and here the defendant landlords obtained a distress warrant *before* the assignment for the benefit of creditors, but did not levy thereunder.

■■ Moreover, in the instant case no act of levy was made on the property presently in the hands of the defendant trustee. Even if a levy had been made, the landlords' lien would not be choate until the amount of the lien was established. The amount of the lien is not established until the date of the sale under an uncontested distress levy or the date of the judgment if the levy is contested; the judgment determines the amount of the tenant's debt. § 55–232, Code of Virginia (1950); Hancock v. Whitehall & Co., 100 Va. 443, 41 S.E. 860; Allen v. Hart, 18 Gratt. (59 Va.) 722. Also in the present case there was no sale under an uncontested levy; the sale was under an assignment for the benefit of creditors.

Hence under the authority of United States v. Waddill, Holland & Flinn, Inc., supra, the United States should be granted its motion for summary judgment and an order has this day been entered directing the Clerk to draw his check in the sum of $808.13 (same being the balance of the proceeds on deposit to the registry of this cause) to "Internal Revenue Service" and forward same to the United States Attorney if no notice of appeal is filed within sixty (60) days from this date, or at an earlier date if counsel for the landlords advise in writing that no appeal will be noted.

5. § 5523 is now Va.Code § 55–231 (1950).

6. § 5523 is now Va.Code § 55–231 (1950).

7. § 5524 is now Va.Code § 55–233 (1950).