# CHARLESTON.

PEPSI-COLA BOTTLING COMPANY *v.* INDIAN ROCK BOTTLING COMPANY *et al.*

(No. 5194.)

Submitted February 17, 1925.   Decided February 24, 1925.

1. CHATTEL MORTGAGES—LANDLORD AND TENANT—*Landlord's Statutory Lien for Rent Attaches from Beginning of Tenancy; Landlord's Lien Against Lessee's Personalty on Leased Premises Takes Priority Over Unrecorded Deed of Trust.*

    A landlord's statutory lien for rent attaches from the beginning of the tenancy; and where personal property of the lessee is on the leased premises at the beginning of the tenancy, the landlord's lien for rent takes priority over an unrecorded deed of trust on such property, whether executed prior to or after the beginning of the tenancy.   (p. 272.)

    (Chattel Mortgages, 11 C. J. §§ 191, 192; Landlord and Tenant, 36 C. J. § 1461.)

2. APPEAL AND ERROR—*Finding of Fact in Equity Case not Disturbed, Unless Contrary to Plain Preponderance of Evidence.*
    In equity the finding of any fact by the circuit court will not be disturbed on appeal, unless contrary to the plain preponderance of the evidence.   (p. 275.)

    (Appeal and Error, 4 C. J. § 2869.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by the Pepsi-Cola Bottling Company against the Indian Rock Bottling Company and another. From a decree of dismissal, plaintiff appeals.

*Affirmed.*

*Koontz, Hurlbutt & Revercomb,* for appellant.
*T. W. Peyton,* for appellee Zacharias.

MILLER, JUDGE:

The plaintiff, a lien creditor of the defendant company, brought this suit against the company and Anna M. Zacharias, alleging that Mrs. Zacharias had sold certain personal property of the defendant company under a distress warrant, and became the purchaser thereof herself, in fraud of plaintiff's rights, and praying that a receiver be appointed to wind up the affairs of the company, and that Mrs. Zacharias be restrained from disposing of the property so purchased by her, and that she be required to pay to plaintiff the amount of the defendant company's indebtedness to it. The lower court dismissed plaintiff's bill, without prejudice to any other action it might see fit to institute.

Prior to August 30, 1921, the plaintiff was engaged in the manufacture and sale of distilled water and soft drinks in a building leased from Mrs. Zacharias. On that date plaintiff sold to defendant company its business and equipment, and took a deed of trust on the property sold, to secure two purchase money notes. The deed of trust is dated the same day the sale and purchase was made, and was acknowledged that day, but was not recorded in the office of the clerk of the county court until September 13, 1921. The lease under which plaintiff held was dated August 30, 1920, and provided for a term ending May 1, 1924. A few days before the purchase of the property by defendant company, representatives of the two companies had a conference with Mrs. Zacharias, to ascertain if she would execute to the purchaser a lease on the premises then occupied by plaintiff. Mrs. Zacharias agreed to do so; and it appears that the old lease was cancelled at that time. Mr. R. H. Williamson, vice-president and general manager of the plaintiff company, testified that the lease was surrendered, and the surrender accepted by Mrs. Zacharias with the understanding that she would execute to defendant company a new lease. Mr. Emigh, the representative of the defendant company, says he saw Mr. Williamson hand the old lease to Mrs. Zacharias, and that it was understood she would execute a new one.

The evidence is conflicting as to whether Mrs. Zacharias was informed on that occasion that defendant company con-

templated executing a deed of trust to plaintiff. Mr. Williamson testified that he told her plaintiff was going to take a deed of trust on the property. Mr. Emigh said that he could not be positive whether she was told of the deed of trust or not; and Mrs. Zacharias says she was not told of the deed of trust, and knew nothing about it until some time in the spring of 1922.

The first proposition advanced by plaintiff is that its deed of trust is superior to the lien of Mrs. Zacharias, if she has any lien for rent.

Section 11, chapter 93 of the Code provides: ''If the goods of such lessee, assignee, or undertenant, when carried on the premises are subject to lien, which is valid against his creditors, his interest only in such goods shall be liable to such distress. If any lien be created thereon while they are upon the leased premises, they shall be liable to distress, but for not more than one year's rent, whether it shall have accrued before or after the creation of the lien.''

From the evidence it appears that the sale to defendant company and the execution of the deed of trust to plaintiff took place at the same time. It does not clearly appear when Mrs. Zacharias executed a new lease to defendant company, but it does appear that the old lease was surrendered at the conference of all the parties a few days before the transfer of the property in question, upon condition that a new lease was to be executed to the vendee. Emigh, who was a director in the Indian Rock Bottling Company, and was its president and general manager, says he operated under a lease from Mrs. Zacharias to himself, the date of which he did not remember, but says it was to be dated August 30, 1921. This lease was not produced. There is exhibited with the evidence a lease from Mrs. Zacharias to the Indian Rock Bottling Company, dated August 30, 1921, signed by the parties, but not acknowledged, which Mrs. Zacharias says was held by the company until after the distress warrant was levied, when it was handed back to her. Plaintiff contends that the new lease became operative September 1, 1921; of which there is no evidence, and for which view no reason is given. The lower court might reasonably have

found that the tenancy of the Indian Rock company began at the time the sale of the property in question was made to that company. The property was on the premises when the tenancy began.

The landlord's statutory lien for rent attaches from the beginning of the tenancy. 1 Jones on Liens, (3rd ed.) §553; 36 C. J. 490; 16 R. C. L. 988. The deed of trust was not recorded until September 13th; and it is admitted that the new lease began before that date. Whatever may have been told to Mrs. Zacharias at the time of the conference above referred to, if anything, in regard to the proposed deed of trust, the evidence does not show that she had notice of the actual execution of such deed before the same was recorded, even if such notice would be sufficient to defeat her lien for rent. The fact is that the lien for rent attached before the deed of trust was recorded, and that is sufficient to give Mrs. Zacharias' lien priority. "An unrecorded deed is void as to creditors, whether they have notice or not." *Abney* v. *Ohio Lumber* & *Mining Company,* 45 W. Va. 446. "A mortgage or deed of trust of personalty must be recorded to bind purchasers without notice and creditors." *Poling* v. *Flanagan,* 41 W. Va. 191. See also, *Hufford* v. *Akers,* 52 W. Va. 21; *Delaplain* v. *Wilkinson,* 17 W. Va. 242; *Guerrant* v. *Anderson,* 4 Rand. 208.

In their reply brief counsel for appellant advance the proposition that a purchase money deed of trust is valid without notice and without recordation as against the creditors of the grantor therein, for the reason that the grantor in the trust deed does not acquire such an interest in the property as can become subject to either prior or subsequent claims or liens of other creditors. Whatever may be the rule in other jurisdictions as to deeds of trust and mortgages on real property, under the recording statutes there, no such distinction has ever been made in this state. And in the case of *Hufford* v. *Akers, supra,* where there was a conditional sale of chattels, with title reserved in the vendor, and the chattels were placed upon the premises by the vendee before the recordation of the contract of conditional sale, it was held that the goods so purchased and placed on the leased

premises prior to the date of recordation of the contract were liable to distraint for rent. And in that case it was held that by the contract of sale the title to the property remained in the vendor until the purchase money was paid.

It is charged that the sale of the property to herself by Mrs. Zacharias while she was an officer and director of the defendant company, was in fraud of plaintiff's rights, and therefore void, and that she thereby became personally liable to plaintiff for its claim against the defendant company. On the question of Mrs. Zacharias' official connection with the defendant company, the evidence is conflicting. Nowhere does it appear that she was president of the company for more than three days, if at all. Mr. Benton, who was secretary and treasurer of the company for a period of two or three months, from July to September or October, 1922, testified that Mrs. Zacharias was a director while he was connected with the company; and that at one meeting of the board she was elected president. He says that at that meeting the company "changed presidents"; and when asked: "How long did that last," he answered, "I don't know that it was ever changed." He says that the election was about two or three weeks before he left the services of the company, and that he thinks she assumed the duties of president; that she took Mr. Emigh's place as president; but that Emigh continued to sign all checks. Emigh testified that Mrs. Zacharias was president "for a couple of days", some time in September, 1922; which was three months before the the sale under the distress warrant. Mrs. Zacharias swears that she never held either the office of director or that of president, and that she sold her stock September 5, 1922.

It appears that some time in September, 1922, Mrs. Zacharias began working for the company, she says September 25th. She says her duties consisted of washing and filling bottles, taking orders, attending the telephone, keeping accounts, and doing whatever she was asked to do by Mr. Emigh, "the general manager and president of the whole thing." She says she was working for the company just to curtail expenses and look out for her own interests. All she received from the company in the way of wages was six

dollars. A short time after the transfer of the property to the Indian Rock company, about September 9, 1921, Mrs. Zacharias loaned the company $1,000.00, and on September 17th, an additional $2,000.00. Shortly afterwards she took stock in the company to the amount of $500.00 in part payment of its indebtedness to her, and a note for the remaining $2,500.00, which after maturity was reduced to judgment, yet unsatisfied. These facts tend to corroborate Mrs. Zacharias' statement that her connection with the company was to protect her own interests by helping to curtail expenses. She does admit that while working for the company she received from Emigh $400.00 on a note he owed her. This was after the time she says she sold her stock. When she was president for three days, if at all, does not appear. There is no clear proof of the alleged acts of fraud charged. The lower court found against plaintiff on the facts, by dismissing the bill for want of equity. In view of the conflict of the evidence, we can not say that the court erred in so finding.

It is contended by appellant that the sale of the property in question, under the distress warrant, without any notice to anyone, was void, and that Mrs. Zacharias acquired no title to the property thereunder.

The constable making the sale testified that it was made after proper notice and advertisement. It appears that the sale was begun between ten and ten thirty o'clock in the morning. First some articles not covered by the deed of trust were sold. A question arising as to the right of the constable to sell the property covered by the deed of trust, he announced to those present that he would continue the sale until Mrs. Zacharias consulted her lawyer. He says that later Mrs. Zacharias came to his office and told him to proceed with the sale, and that he sold the remainder of the property at two o'clock the same day. He says there were a number of people present, that some one besides Mrs. Zacharias bid on the property, and that it was sold to her, at the highest bid made. The statute, section 141, chapter 50 of the Code, provides that such sales shall be made between the hours of ten in the forenoon and four in the afternoon,

on the day appointed and at the place designated in the notice. The property in question was all sold between the hours designated by the statute; and there is no evidence in the record of any irregularity.

On all the facts in issue the trial court found for the defendants, and in view of the conflicting evidence we can not say that the court erred in so finding. "The rules established by the repeated decisions of this court, both as to law and equity, is that the finding of any fact by the circuit court will not be disturbed unless it is contrary to the plain preponderance of the evidence." *Weaver* v. *Akin*, 48 W. Va. 456; *Ruckman* v. *Cox*, 63 W. Va. 74.

The decree will be affirmed.

*Affirmed.*