## CHARLESTON.

DINGESS-RUM COAL COMPANY *v.* DRAPER EAGLE COAL COMPANY

(No. 6514)

Submitted October 15, 1929. Decided October 22, 1929.

*Rolla D. Campbell,* for plaintiff in error.
*Chas. L. Estep,* for defendant in error.

MAXWELL, JUDGE:

The Dingess-Rum Coal Company, plaintiff in error, is the owner of a tract of land in Logan county. In 1905 it leased 1150 acres to the Fort Branch Coal Company, later Fort Branch Coal Corporation, for mining purposes. This corporation in turn sub-let in part to the Fort Branch Collieries Company in September, 1925.

In September, 1928, a distress warrant was sued out against the Fort Branch Coal Corporation, and the Fort Branch Collieries Company, for the sum of $14,073.41 for rent due upon contract. The warrant was properly served the same day and certain items of personal property were levied upon. Among those items was property described in the record under groups "A", "B" and "C". Group "A" consisted of one ten-ton Jeffrey mine motor, Type MB No. 3455 and its attachments; Group "B" consisted of certain groceries and other merchandise listed as having value of $562.43; Group "C" consisted of 241 cases of powder called monabel.

October 10, 1928, the Draper Eagle Coal Company, defendant in error, whose operations are contiguous to the collieries company, filed a petition as intervenor asserting its ownership of the property in Groups "A", "B" and "C". To this petition plaintiff in error replied generally and issue was joined. Upon the trial without a jury the court found in favor of plaintiff in error for the amount of rent claimed in the distress warrant but further found at the time of the levy the Draper Eagle Coal Company was the owner of the property described in said Groups, and that the same was not

subject to the landlord's lien. This writ of error is to the judgment on the petition.

A consideration of each group separately is necessary. As to the mine motor described under Group "A", the evidence shows that it was ordered by John L. Vaughan, president of the Fort Branch Collieries Company, for that company sometime in the fall of 1926. It was shipped from its manufacturer on December 31, 1926, and delivered on the premises of the Fort Branch Collieries Company where it remained up to the time of the levy. The evidence further shows that the Fort Branch Collieries Company found itself unable to pay for the motor so the Draper Eagle Coal Company by two vouchers dated respectively February 26, 1927, and May 26, 1927, paid for same and allowed it to be used by the collieries company. Whether there was a sale to the Draper Eagle Coal Company as contended by that company is not clear from the record, nor is it controlling. The primary fact to be borne in mind is that the motor was originally purchased by the sub-lessee, the Fort Branch Collieries Company, and moved on to its premises. Immediately the landlord's lien for rent attached. Code, Chapter 93, section 11. "The statutory lien attaches, as regards chattels, at the beginning of the tenancy or as soon as the chattels are brought upon the premies. * * *" 36 C. J., page 490. See also, 16 R. C. L. 988, and *Pepsi-Cola Bottling Co.* v. *Indian Rock Bottling Co.*, 98 W. Va. 269. Nor was the lien ever served, for the motor remained on the premises the entire time; and even conceding a sale to Draper Eagle Coal Company, the lien of plaintiff in error would not be destroyed thereby. *In re McIntire*, 142 Fed. 593.

The record before us does not disclose at what period or periods the rent became due, nor for what period of rent the levy was made, but it is not questioned that the levy was made within the period of one year after the rent became due, as required by statute, Code, Chapter 93, section 10, and for not exceeding one year's rent, as limited by section 11 of said Chapter. Nor is it clear whether the tenant or undertenant was in arrears, or, in fact, whether the undertenant was required to pay rent to the tenant or to the landlord. But this

is not important because under the provisions of said section 11 the goods of an undertenant on leased premises are liable to distress for the whole amount of the rent due by the tenant to the landlord, regardless of the state of the accounts between the tenant and the undertenant. *Bernard* v. *McClanahan,* 115 Va. 453, 79 S. E. 1059. This situation has been changed in Virginia by the incorporation in the statute of the provision ''nor shall the goods of the undertenant be liable to a greater amount than such undertenant owed the tenant at the time the distress was levied.'' Code of Va., 1924, sec. 5523. It follows that the asserted lien of the landlord must also be upheld as to the motor.

As to Group ''B'', the evidence shows that this merchandise was owned by the Fort Branch Collieries Company and sold to the Draper Eagle Company and removed from the premises of the collieries company two days before the levy. Our reasoning as to the motor applies with equal force to the merchandise. The lien must also be upheld as to the latter.

Concerning the 241 cases of monabel powder listed in Group ''C'', the testimony discloses that the only powder house or magazine fit for its storage in large quantities was on the property occupied by the Fort Branch Collieries Company. It is shown that the Draper Eagle Coal Company had for some time stored its powder there under an arrangement whereby the collieries company got its powder supply from the Draper Eagle Company at cost for the privilege accorded the latter company. Such an arrangement does not constitute a lease. It is more in the nature of a license. 35 C. J. 954. The evidence is uncontradicted that this particular lot of 241 cases was bought by Draper Eagle Coal Company and in accordance with custom stored on sub-lessee's land. Under these circumstances the landlord's lien did not attach. *Davis* v. *Payne Adm'r.,* 4 Rand. 332; *Thomas* v. *Hubbard Co.,* 79 W. Va. 138; *Electric Co.* v. *Martin,* 99 W. Va. 519; *Lilly* v. *Remsen,* 101 W. Va. 152. In this situation the fact that the powder was removed to an adjoining property on the night before the levy has no significance. We therefore hold that the levy of plaintiff in error on the powder was invalid.

It follows that the judgment of the trial court as to the powder must be affirmed, but as to the motor and the merchandise it is reversed.   Judgment will be rendered here accordingly.

*Affirmed in part; reversed in part; judgment here.*