# EASON et al. v. WHEELOCK et al.

No. 6365.   Decided December 17, 1941.   (120 P. 2d 319.)

See 10 Am. Jur., 783; 14 C. J. S. Chattel Mortgages, sec. 304.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for appellant.

*E. D. Hatch,* of Salt Lake City, for respondents.

WOLFE, Justice.

Action in tort for conversion of personal property. From a judgment by the district court sitting without a jury in favor of the plaintiffs for $700, defendant Wheelock appeals.

The plaintiffs and respondents, J. S. Eason, R. S. Lochhead, and Belle L. Eason are the remaining qualified officers and directors of the Builders' Supply Company, a defunct Utah corporation. The defendants were G. H. Wheelock, station agent, and B. H. Decker, superintendent, Utah Division of the Denver and Rio Grande Western Railroad Company. The lower court dismissed the action as against B. H. Decker from which no appeal is taken.

The appellant, Wheelock, in his briefs and oral argument sets forth three grounds on which to base an appeal. First, that the landlord's lien attaches as of the commencement of the term of lease and is not cut off by a subsequent transfer; secondly, that the acts complained of do not amount to a conversion; third, that the measure of damages was incorrectly determined.

The facts pertinent to a proper solution of this case are as follows:

The Builders' Supply Company, hereinafter called the Supply Company, sold the personal property in question to the Union Lime and Material Company on March 28, 1938. The bill of sale related that a promissory note for $1,000 secured by a chattel mortgage was given in consideration but the mortgage was not introduced in evidence. A condition imposed by the sale was that the Union Lime and Material Company, hereinafter called the Lime Company, should secure a lease on the building then being used by it from the Denver and Rio Grande Western Railroad Company, hereinafter called the Railroad Company. This was done. The Lime Company entered upon its lease on the 15th day of April, 1938. The lease provided for a year to year tenancy with an annual rental of $200 payable semi-annually in advance.

The leased building was located at 135 West Ruston Avenue, Ogden City, Utah, and within it the Lime Company kept the personal property which subsequently became the subject of this litigation. It consisted of a motor truck, office equipment, and miscellaneous tools of the lime trade.

On April 14, 1939, the date on which the year lease expired, the Lime Company resold by bill of sale its assets including the equipment stored at 135 West Ruston Avenue to the Supply Company. At this time, the Lime Company was $75 in arrears in rent to the Railroad Company.

On April 22, 1939, the date on which the Railroad Company terminated the Lime Company's lease, Mr. Wheelock visited the building and finding no one around the premises placed a padlock upon the door. Subsequently, Wheelock received a letter from B. H. Decker, his superintendent, dated April 26, 1939, asking him to "see just what the ground or building contains and take steps to see that the Lime Company does not remove them." On receipt of this correspondence, he again visited the property but did not enter or disturb the premises.

On May 1, 1939, Mr. Eason, President and General Manager of the Supply Company, accompanied by a prospective purchaser, called upon the appellant Wheelock at his office and "notified him that there was a D. & R. G. padlock" on the building and asked him to release the property. This Wheelock refused to do. Shortly thereafter Wheelock removed from the building a motor truck, typewriter and check protector which he stored in the Rio Grande freight warehouse. On May 3, 1939, Eason sent a registered letter to Mr. Wheelock, as agent for the Railroad Company, salling his attention to his previous refusal to relinquish the equipment and giving him until May 9, 1939, in which to do so. Wheelock did not surrender the property. The plaintiffs then brought this suit in conversion.

Defendant's answer to plaintiff's complaint, was a general denial.

The respondent in his complaint alleges that the wrongful conversion by appellant was "at a date and time between the 15th day of April, 1938, and the 17th day of August, 1939," and the lower court so found. During a major portion of this time, the Railroad Company had a statutory lien upon the equipment left on their premises by the lessee. Under the facts of the instant case the lessor's lien attached to the property of the lessee on the 15th day of April, 1938, It is provided by our statutes at Chapter 3, 52-3-1, R. S. U. 1933, that:

"* * * lessors shall have a lien for rent due upon all non-exempt property of the lessee brought or kept upon the leased premises so long as the lessee shall occupy said premises and for *thirty days* thereafter." (Italics added.)

A lessor's statutory lien for rent attaches from the very beginning of the tenancy [*Pepsi-Cola Bottling Co.* v. *Indian Rock Bottling Company*, 98 W. Va. 269, 126 S. E. 715; *Dingess-Rum Coal Co.* v. *Draper Eagle Coal Co.*, 108 W. Va. 37, 150 S. E. 228; 32 Am. Jur. 468; 36 C. J. 490; 24 Cyc. 1250; 16 R. C. L. 988] and continues for thirty days after the occupation by the lessee ceases. *In re Stone's Estate,* 14 Utah 205, 46 P. 1101.

The lien in the instant case having attached on April 15, 1938, it continued until May 14, 1939. The lease expired on April 14, 1939, and at this date the Lime Company sold their property to the plaintiffs and ceased to occupy the premises. It was during the following thirty days as given by our statute that all affirmative acts of alleged conversion took place insofar as the defendant Wheelock may be concerned. Any act after that date would be one of withholding the property. There is no allegation by the plaintiffs of a conversion based on a demand made after a reasonable time had elapsed in which to foreclose the lien, and a subsequent refusal by the Railroad Company to surrender the property or on the theory that the defendant individually or for the railroad company held the equipment with-

out returning it regardless of the demand when the property could no longer be held for lien purposes. We have no such question before us.

The respondents place reliance on the theory that they possessed a purchase money mortgage on the equipment and that this mortgage had priority over the ■ lien of the Railroad Company. Our statutes provides in Chapter 3, 52-3-2, R. S. U. 1933, that:

"The lien provided for in this chapter shall be preferred to all other liens or claims except claims for taxes and liens of mechanics under chapter 1 of this title, mortgages for purchase money, and claims of employees for wages which are preferred by law  *   *   *."

The respondents relied not on a purchase money lien but on a bill of sale from the Lime Company in establishing their title to the property. In the bill of sale there is a recital that as part of the consideration for the sale, a chattel mortgage previously given was cancelled. The mortgage was not introduced into evidence. The record does show, however, in the testimony of G..E. Grower, Secretary of the Supply Company, that such a mortgage had been given by the Lime Company. Nevertheless, even if we hold such evidence sufficient to establish the mortgage, there is no evidence that such had been properly filed as required by our statutes, 13-0-1, R. S. U. 1933, in order to give notice to the lessor. *Commercial Security Bank of Ogden* v. *Chimes Press,* 88 Utah 148, 42 P. 2d 990; *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.,* 45 Utah 603, 148 P. 365, Ann. Cas. 1917D, 1158; *Security First Nat. Bank of Los Angeles* v. *Sartori et al.,* 34 Cal. App. 2d 408, 83 P. 2d 863, 868; 37 A. L. R. 400.

The lessor, as far as the record shows, was a party without notice whose lien attached at the granting of the lease and was superior to the prior unfiled mortgage of the Lime Company.

As this case must be reversed, a discussion of the question of asserted improper damages is not deemed necessary.

The judgment is therefore reversed. Costs to appellant.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.