The CITIZENS BANK, a State chartered bank corporation, Plaintiff and Respondent,

v.

The ELKS BUILDING, N.V., a Netherlands Antilles corporation, Defendant and Appellant.

No. 18185.

Supreme Court of Utah.

March 29, 1983.

Joseph C. Rust, Salt Lake City, for defendant and appellant.

Theodore E. Kanell, Ronald L. Poulton, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

This appeal concerns the priority of claims to a security interest in personal property used in a restaurant that went out of business. The landlord, the appellant, Elks Building, N.V., claims a lien for unpaid rents pursuant to U.C.A., 1953, § 38–3–1 and pursuant to a provision in the lease. Elks contends that its lien is superior to Citizens Bank's lien which was perfected under the provisions of the U.C.C. to secure a loan from the Bank. The matter was adjudicated on cross motions for summary judgment. The trial court held for the Bank. We affirm.

The parties have stipulated to the following facts: The Elks Building Corporation, N.V., owns a commercial building in Salt Lake City, Utah. On August 6, 1980, Food Innovation Systems, Inc., d/b/a Pouches Restaurant, leased space from Elks in which to operate a restaurant. The lease ran from August 15, 1980 to February 14, 1981. Pouches moved equipment necessary for the restaurant operation onto the leased premises.

In November of 1980 Pouches failed to make its monthly payment. On December 8, Elks served a notice of default on Pouches which gave Pouches thirty days to pay the rent or face legal action. Pouches did not respond. On approximately December 15, Pouches closed its restaurant but left its restaurant equipment on the premises. Shortly thereafter, Elks padlocked the doors to the premises and took possession of the equipment.

Thereafter, in March 1981, Pouches applied for a $70,000 loan from Citizens Bank. The loan was approved and disbursed to Pouches on April 7.[1] As security for the loan, Pouches signed a security agreement which listed as collateral all equipment and fixtures that it owned. Included in the list was the restaurant equipment that Pouches had left on the Elks' premises.

To perfect the security agreement, the Bank filed a financing statement on the same day that it disbursed the loan. Two days later, on April 9, 1981, Elks filed a complaint against Pouches for unpaid lease payments and asserted a landlord's lien against the equipment pursuant to U.C.A., 1953, § 38–3–3. Elks eventually obtained a default judgment which foreclosed Pouches' interest in the restaurant equipment. At the sheriff's sale of the equipment, the Bank appeared, presented its secured interest, and claimed priority over Elks' judgment lien. Because of the conflicting claims, the sheriff terminated the sale, and this lawsuit ensued.

The trial court ruled that the Bank's security interest had priority over whatever lien Elks had. On appeal Elks contends that it has both a statutory lien under § 38–3–1 and a common law contractual lien on the restaurant equipment, and that

---

1. Apparently, one purpose of the loan was to enable Pouches to pay off money owed on its restaurant equipment. About $38,000 was disbursed in checks made out jointly to Pouches and the businesses that had leased or sold Pouches the restaurant equipment.

both liens are prior to the Bank's security interest. The Bank counters by attacking the validity of Elks' asserted liens and by arguing that even if the liens are valid, its security interest is superior. We think the issues as to the validity of Elks' liens are dispositive.

█ U.C.A., 1953, § 38–3–1 creates a limited lessor's lien:

Except as hereinafter provided, lessors shall have a lien for rent due upon all nonexempt property of the lessee brought or kept upon the leased premises so long as the lessee shall occupy said premises and for thirty days thereafter.

Thus, by the express terms of the statute, the lessor's statutory lien terminates thirty-one days after the lessee has quit the premises. Therefore, Elks' statutory landlord's lien expired January 16, 1981, and, barring a contractual lien, Elks stood as an unsecured creditor after that date. This conclusion is consistent with prior Utah law. *Eason v. Wheelock,* 101 Utah 162, 120 P.2d 319 (1941); *In re Stone's Estate,* 14 Utah 205, 46 P. 1101 (1896).

In *In re Stone's Estate, supra,* we strictly construed a predecessor of § 38–3–1. The former version, which is almost identical, read:

Lessors, except as hereinafter provided, shall have a lien for rent due upon all of the property of the lessee not exempt from execution, as long as the lessee shall occupy the leased premises, and for thirty days thereafter.

The lessee in that case died and left $270 rent unpaid. Thirty-four days after the lessee's death, the lessor, Eccles Lumber Company, brought proceedings to claim the benefit of the statutory landlord's lien. This Court held that the 34-day delay "brought the action of the lessor without the terms of the statute, and [therefore] his lien was gone." 14 Utah at 208, 46 P. at 1102. We stated: "[A]t the expiration of 30 days from the day on which a lessee ceases, for any reason, to occupy such premises, the lien ceases to exist, and consequently to have any force or effect." *Id.* at 207, 46 P. at 1102.

In *Eason v. Wheelock, supra,* we again construed a predecessor of § 38–3–1 with the same 30-day cut-off clause. There the holder of a chattel mortgage attempted to remove property securing the mortgage from leased premises before the 30 days had passed. The lessor locked the mortgagor out, and the mortgagor sued for conversion. Because the mortgagor's attempt to retrieve the property occurred *within* the 30-day statutory period, we upheld the lessor's right to retain possession of the lessee's property. We also stated that "[a]ny act *after that date* would be one of withholding the property." 101 Utah at 165, 120 P.2d at 320 (emphasis added).

In these types of cases, lessors, to preserve their statutory liens, must comply with the terms established by U.C.A., 1953, §§ 38–3–3 through 38–3–6, including the 30-day period. These sections permit the lessor to file a complaint against the lessee, request a writ of attachment, and execute on the writ. Had Elks done this, its statutory lien would have been perfected, and it would have been prior to the Bank's security interest. Instead, appellant waited almost four months before filing a complaint and never sought a writ of attachment.

Elks argues, however, that because it had possession of the restaurant equipment, filing a complaint and issuing a writ of attachment were not required to perfect its lien. It asserts that a lessor's possession of the lessee's property indefinitely extends the statutory landlord's lien. However, Elks points to no authority which supports this argument. The only Utah case that Elks cites in support is *Eason v. Wheelock, supra,* which we read as reaching the opposite conclusion. The cases from other jurisdictions that appellant cites do not interpret a landlord's lien statute with a cut-off provision similar to our own. *See Chessport Millworks, Inc. v. Solie,* 86 N.M. 265, 268, 522 P.2d 812, 815 (1974) (citing N.M.S.A., 1953, § 61–3–4, which extends the lien until rent is paid); *Bates & Springer, Inc. v. Friermood,* 109 Ariz. 203, 205, 507 P.2d 668, 670 (1973) (based on A.R.S., 1956, § 33–362(A), under which the lien is extended until rent is paid).

The second issue on this appeal is whether Elks has a contractual lien. The argument is that paragraph twenty-five of Elks' lease with Pouches created a contractual landlord's lien which is superior to the Bank's security interest. The relevant portion of paragraph twenty-five reads:

In the event of any such material default or breach by tenant, landlord may at any time thereafter, with or without notice or demand, without limiting landlord in the exercise of any other right or remedy which landlord may have by reason of such default or breach:

a. without terminating this lease, re-enter the premises, with or without process of law, *and take possession of the same and all equipment and fixtures therein,* and thereafter relet the premises or any part thereof for the account of tenant for such terms and upon such conditions as landlord may deem proper. [Emphasis added.]

The remedy contemplated by this provision was apparently designed to permit the lessor to protect his interest by entering and reletting the premises. Nothing in the language suggests that the parties intended that a lien for unpaid rent was to be created against the equipment or fixtures.

 This Court has defined the term "lien" as a legal charge collectible out of specific property for the payment of a debt. *Olsen v. Kidman,* 120 Utah 443, 446, 235 P.2d 510, 511 (1951). Being only a charge against or encumbrance on property, a lien does not create a title to, or an estate interest in the property. *Martin v. Dennett,* Utah, 626 P.2d 473, 475 (1981). In other words, a lien gives the lienholder a right to collect his debt out of the charged property, but it does not give him an ownership interest in the property.

 Parties may create a lien by a contract. *See, e.g., Frisco Joes, Inc. v. Peay,* Utah, 558 P.2d 1327 (1977) (contractual landlord's lien created). However, the language which creates the lien must clearly state an intention to do so. *Olsen v. Kidman, supra; Cherno v. Dutch American Mercantile Corp.,* 353 F.2d 147 (2d Cir.1965).

Thus, in accordance with the nature of a lien, a contractually created lien must (1) identify the property to be charged, and (2) make clear that the lien is to secure payment of the debt in question. 51 Am.Jur.2d *Liens* § 28 (1970). *See also Wellbro Building Co. v. McConnico,* Okl., 421 P.2d 837, 839 (1966) (quoting 53 C.J.S. *Liens* § 2(b)); 52 C.J.S. *Landlord and Tenant* § 606 (1968).

In cases where courts have held that a lease created a landlord's lien, the nature of the debt and of the property to be charged have been identified in the lease. Thus, in *Frisco Joes, Inc. v. Peay, supra,* the lease that created a contractual lien provided that any unpaid rent would be a lien against the lessee's personal property, which was not to be removed until all the rent was paid. In *In re King Furniture City, Inc.,* 240 F.Supp. 453, 454 (E.D.Ark. 1965), the lease stated that "[t]o secure the payment of all rent due and to become due hereunder, ... Tenant hereby gives the Landlord an express contract lien on all property, chattels or merchandise which may be placed in the leased premises ...." In *In re Leckie Freeburn Coal Co.,* 405 F.2d 1043, 1045 (6th Cir.1969), the court held that a contractual lien was created by a lease clause which stated that "all of Lessee's mining machinery and equipment upon said premises shall be subject to a lien to secure unto Lessors payment of all rental ... which shall have become due and payable hereunder ...." In *Bank of North America v. Kruger,* 551 S.W.2d 63, 64 (Tex.Civ. App.1977), the lease contained a provision expressly granting a lien to the lessor against all the lessee's personal property to secure performance under the lease (*e.g.,* to pay rent). Finally, in *Todsen v. Runge,* 211 Neb. 226, 227, 318 N.W.2d 88, 89 (1982), the lease stated that "[t]he lessors will have a lien on the crops raised on the premises until the final cash [rental] payment is made on Oct. 1, 1979." *See also Needle v. Lasco Industries, Inc.,* 10 Cal.App.3d 1105, 89 Cal.Rptr. 593 (1970), for the proposition that a U.C.C. security agreement must indicate the obligations for which the collateral is security, and 4 R. Anderson, *Uniform*

*Commercial Code* § 9–203:8 (2d ed. 1971) ("The security agreement must recite the obligation which is secured.")

The only case we have found which departs from the principles above stated is *Dunham's Music House, Inc. v. Ashville Theatres, Inc.,* 10 N.C.App. 242, 178 S.E.2d 124 (1970). There the court held that a lease created an Article 9 security interest in a piano and organ left by the lessee on the leased premises. The lease provided that the lessee could not remove his equipment from the premises if the lessee was in default under the lease at termination, and that all items removed would become the lessor's property. *Id.* at 243, 178 S.E.2d at 125. The lease did not state that the purpose of the lessor's right to possess the lessee's property was to provide security for a debt. However, the court ruled, without explanation, that this language was sufficient to create a security interest.

■ In light of the above cases, we do not read paragraph twenty-five of the Elks-Pouches lease as creating a landlord's lien. The paragraph gives the lessor the right to re-enter and take possession of the lessee's equipment. The language states that the landlord may take possession of all the property, regardless of how much rent the lessee owes. The paragraph does not state that its purpose is for securing rent, nor does it in any way suggest that a charge is created against lessee's property from which rent may be collected. We conclude, therefore, that Elks has no contractual lien.

This conclusion is consistent with Elks' behavior during the period between Pouches' default under the lease and the initiation of the present suit. During that time, Elks did not evidence any belief that it had a contractual lien on Pouches' property. For example, in its complaint against Pouches, Elks did not assert a contractual lien, only a statutory one. Not until the present suit when Elks was faced with the claim of a superior security interest, did it assert that paragraph twenty-five of its lease created a contractual lien.

Because Elks had no valid basis in the lease for the creation of a contractual lien,

we need not address the issue of whether U.C.C. Article 9 filing requirements apply to contractual liens. *See Todsen v. Runge,* 211 Neb. 226, 318 N.W.2d 88 (1982), and cases discussed therein.

Finally, Elks argues that the Bank has not sufficiently supported its claim that it was a purchase money lender. Elks asserts that the stipulated facts do not show that the restaurant equipment which secured the Bank's loan was being purchased by Pouches. The argument is without merit. Both Elks and the Bank stipulated in oral argument before the district court that it made no difference whether the Bank's security interest was a purchase money security interest or not. Moreover, Elks does not deny that the Bank has a secured interest. It is sufficient, therefore, that the Bank has a security interest of some kind that is superior to Elks' claim.

Affirmed. Costs to respondents.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.