**In re David R. WILLIAMS, Debtor.**

**Kenneth A. Rushton, Trustee, Plaintiff,**

**v.**

**Deanna Williams, Shelley A. Williams, Defendants.**

**Bankruptcy No. 97–27460 JHA.**

**Adversary No. 00–02023.**

United States Bankruptcy Court, D. Utah, Central Division.

Dec. 5, 2001.

R. Kimball Mosier, Parsons, Davies, Kinghorn & Peters, Salt Lake City, UT, for Plaintiff.

Howard P. Johnson, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION

TOM R. CORNISH, Bankruptcy Judge.

This matter came on for evidentiary hearing on the Complaint filed by Kenneth A. Rushton, the Chapter 7 trustee ("Trustee"), against DeAnna Williams ("DeAnna") and Shelley A. Williams ("Shelley"), seeking approval pursuant to 11 U.S.C. § 363(h)[1] to sell thirteen parcels of real property. Pursuant to a "Partial Settlement" filed with the Court on September 6, 2001, the parties have agreed that twelve of the thirteen parcels are jointly owned by the debtor and DeAnna and/or Shelley, and they have designated which of those jointly-owned parcels are subject to sale under § 363(h) or subject to partition. *See* Amended Pretrial Order ¶ 4. The only

---

1. Unless otherwise stated, all future statutory references are to title 11 of the United States Code.

issue remaining for the Court to determine is whether DeAnna has an ownership interest in the thirteenth parcel, commonly referred to as "Parcel 10," located at 1171 South West Temple in Salt Lake City, Utah. *Id.* at ¶¶ 4–5. This is an office building in which debtor conducts business. If she does, the parties have stipulated that pursuant to § 363(h)(1) and (2), partition in kind of Parcel 10 among the estate and DeAnna is impracticable, and that the sale of the estate's undivided interest in Parcel 10 would realize significantly less for the estate than the sale of Parcel 10 free and clear of DeAnna's interest. *Id.* at ¶ 4.e. Thus, assuming that the requirements of subsections (3) and (4) of § 363(h) [2] are met, the Trustee will be authorized to sell Parcel 10, and will be required to pay DeAnna for her interest in the property pursuant to § 363(j). If, however, DeAnna is held to have no interest in Parcel 10, the Trustee will be authorized to sell it pursuant to § 363(b), and DeAnna will not be entitled to any share of the sale proceeds.

A trial was held by the Court on September 6, 2001. R. Kimball Mosier, Esq. of Parsons, Davies, Kinghorn & Peters, Salt Lake City, Utah, appeared on behalf of the Trustee. Howard P. Johnson, Esq. of Salt Lake City, Utah, appeared on behalf of the Defendants. The Court has considered the evidence, the pleadings filed by the parties, the arguments of counsel and all relevant authorities, and based thereon hereby concludes that DeAnna does not have an ownership interest in Parcel 10. Further, the Court determines that DeAnna does not have an equitable lien on Parcel 10. The following are the Court's Findings of Fact and Conclusions of Law as required under Fed. R. Bankr.P. 7052(a). A separate judgment shall issue on this date as required under Fed. R. Bankr.P. 7052(a) and Fed.R.Civ.P. 58.

## I. *Findings of Fact*

The following are the Court's Findings of Fact. To the extent that any Finding of Fact is considered to be a Conclusion of Law, it is incorporated into the Conclusions of Law below.

1. On December 6, 1995, the debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii, Case No. 95–01859.

2. On August 6, 1997, the debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code, and venue of the case was transferred to Utah.

3. On October 29, 1997, the Trustee was appointed.

4. DeAnna Williams, the debtor's spouse, is a resident of Hawaii.

5. DeAnna has asserted various secured and unsecured claims against the debtor's estate.

6. On January 31, 2000, the trustee filed a "Complaint to Obtain Approval Pursuant to U.S.C. § 363(h) [sic] to Sell Interest of Estate and Co-Owner in Property" thereby commencing the above-captioned adversary-proceeding.

7. On March 2, 2000, DeAnna answered the Trustee's Complaint, and asserted a counterclaim against the Trustee ("Counterclaim"). In her first claim for relief, DeAnna seeks a determination that she has an undivided 1/2 interest in Parcel 10 "pursuant to her marital property rights...." Counterclaim ¶ 13. Her

---

**2.** The parties have not stipulated as to subsections (3) or (4) of § 363(h), and they did not present evidence related to these subsections at the trial.

second claim for relief seeks a declaration that she has an equitable lien on Parcel 10, entitling her to a 1/2 interest in that Parcel. Finally, DeAnna's third claim for relief requests that the Court partition Parcel 10 among herself and the debtor's estate pursuant to Utah Code Ann. § 78–39 et seq.[3]

8. On March 13, 2000, the Trustee filed an answer to DeAnna's Counterclaim, asserting eleven defenses, including estoppel and laches.

9. On September 6, 2001, the Court signed an Amended Pretrial Order which, pursuant to the parties' Partial Settlement, limited the issue for trial to DeAnna's ownership interest in Parcel 10. This Amended Pretrial Order governs and controls all issues raised by the parties and issues to be decided by the Court.

10. On September 6, 2001, the Court conducted a trial. At that trial, the Court, admitted the following Exhibits without objection from either party:

a. *Plaintiff's Exhibit A:* Warranty Deed dated August 1, 1973, under which Milton D. and Alice J. Hendrickson and S. John and Madalyn Webber conveyed "Lots 2 and 3, Block 4, NORTH COLUMBIA SUBDIVISION, a subdivision of part of Block 22, Five Acre Plat 'A', Big Field Survey" to the debtor, "a married man[.]" The lot so described in Plaintiff's Exhibit A is Parcel 10, the parcel whose ownership is subject to this adversary proceeding. Hearing Transcript at 16.

b. *Plaintiff's Exhibit B:* Warranty Deed dated June 13, 1983, under which Viola Wilson conveyed "Lots 4 and 5, Block 4, NORTH COLUMBIA SUBDIVISION ..." to the debtor and DeAnna, "joint tenants with full right of survivorship[.]"

c. *Plaintiff's Exhibit C:* Warranty Deed dated April 4, 1978, under which Sterling G. and Mary P. Webber and James C. and Maxine C. Waller conveyed "Lots 6 and 7, Block 4, North Columbia Subdivision, a subdivision of part of Block 22, Five Acre Plat 'A'. Big Field Survey" to the debtor and DeAnna, as "husband and wife, as joint tenants[.]"

d. *Plaintiff's Exhibit D:* Warrant Deed dated May 4, 1978, under which several grantors conveyed a tract of land located in Salt Lake County, Utah ("Salt Lake Tract") to the debtor.

e. *Plaintiff's Exhibit E:* Quit–Claim Deed dated June 28, 1978, under which the debtor as grantor quit-claimed the Salt Lake Tract to himself and DeAnna "as joint tenants with full rights of survivorship[.]"

f. *Plaintiff's Exhibit F:* Quit–Claim Deed dated August 4, 1980, under which Kennecott Corporation as grantor quit-claimed a tract of land situated in Salt Lake and Tooele Counties ("Kennecott Tract") to the debtor as grantee.

g. *Plaintiff's Exhibit G:* An exact copy of the document submitted as Exhibit D.

---

**3.** This third claim for relief is moot pursuant to the parties' stipulation that "partition in kind of Parcel 10 among the Estate and De- Anna ... is impracticable[.]" Amended Pretrial Order ¶ 4.e.

h. *Defendant's Exhibit 1:* Trust Deed dated October 16, 1973, under which the debtor d/b/a Industrial Communications and DeAnna, "his wife" granted Walker Bank & Trust Company an interest in Parcel 10 ("Trust Deed"). The document shows that it was recorded on October 24, 1973.

i. *Defendant's Exhibit 2:* Deed of Reconveyance dated November 24, 1980, under which Walker Bank & Trust Company, as trustee under the Trust Deed, reconveyed Parcel 10 to the "the person or persons entitled thereto[.]"

11. At trial, the parties stipulated that the Warranty Deed for Parcel 10, which has been admitted into evidence as Plaintiff's Exhibit A, does not name DeAnna as a grantee or joint owner of the property. "David R. Williams, a unmarried man," is listed as the sole grantee.

12. DeAnna and the debtor testified at trial. The following is a summary of their testimony.

 a. The debtor filed bankruptcy when a judgment in the approximate amount of $ 1 million was entered against him awarding a third party ("Judgment Creditor") an ownership interest in "Industrial Communications," a closely held corporation. DeAnna became a creditor of the debtor's estate in large part because she purchased this Judgement Creditor's ownership interest, resulting in a settlement of the judgment the debtor owed the Judgment Creditor. Hearing Transcript at 5–6.

 b. DeAnna and the debtor married in 1963, and they have been married since that time. They have never been legally separated or divorced. Hearing Transcript at 7, 13, 26.

 c. DeAnna brought personal property and approximately $5,000.00 in cash into the marriage. The debtor came into the marriage with an unstated sum of cash, personal property, and equipment. Hearing Transcript at 8.

 d. DeAnna and the debtor were residents of Salt Lake City, Utah from 1966 to 1988. Hearing Transcript at 7.

 e. In 1988 the couple moved to Hawaii, and they have been residents of Hawaii since that time. Hearing Transcript at 7–8, 46.

 f. In the early 1980's, DeAnna inherited approximately $100,000.00 from her mother and her grandmother. Hearing Transcript at 8–9.

 g. DeAnna has a B.S. degree in accounting. Hearing Transcript at 9.

 h. In 1963, just after DeAnna and the debtor married, she engaged in administrative work for Industrial Communications, which at that time, was a sole-proprietorship or "mom and pop" business. DeAnna and the debtor were the principals in Industrial Communications. DeAnna's administrative duties at Industrial Communications included answering the telephone, correspondence, receivables, payables, payroll, collecting tax information, and general office-work. These duties continued during all relevant times. Hearing Transcript at 9–11 & 40.

 i. In approximately 1987, Industrial Communications was incorporated. Hearing Transcript at 10.

j. DeAnna is not and has not been on Industrial Communications's payroll. She and the debtor have "split" the income received from operating the business. Hearing Transcript at 12.

k. During the period of 1963 through 1973, DeAnna and the debtor maintained a joint personal bank account ("Personal Account"). Hearing Transcript at 12.

l. During the period of 1963 through 1973, Industrial Communications had separate business bank accounts in its name (collectively, the "Business Account"). Both the debtor and DeAnna were signatories on the Business Account. Hearing Transcript at 12, 13–14.

m. The debtor and DeAnna's income from Industrial Communications was paid to them from the Business Account, and would be deposited into their Personal Account. Hearing Transcript at 12.

n. The couple's household expenses were paid out of the Personal Account. Hearing Transcript at 12.

o. DeAnna wrote most of the checks from the Business Account. Hearing Transcript at 14.

p. Parcel 10 was acquired in August, 1973, at a time when Industrial Communications was not incorporated. Hearing Transcript at 17.

q. The debtor and DeAnna participated in the decision to purchase Parcel 10, and DeAnna was involved in the purchase. Hearing Transcript at 18, 46. The decision to purchase Parcel 10 was a joint decision. Hearing Transcript at 47.

r. There was no formal closing related to the purchase of Parcel 10. Rather, the debtor gave one of the sellers, who was also a realtor, a check for the purchase price, and approximately one month later he received Plaintiff's Exhibit A, the Warranty Deed, in the mail. Hearing Transcript at 47–48, 61.

s. When the debtor bought Parcel 10, he told the realtor-seller that "it was to be put under the name" of the debtor and DeAnna because anytime he purchases property that is how it is done. Hearing Transcript at 50.

t. When the debtor purchased other tracts of real property he put them in the name of himself and DeAnna so that they would pass to DeAnna in the event of his death, and also because the debtor feels strongly that, as a married couple, the properties should belong to them both. Hearing Transcript at 50.

u. Parcel 10 was not the first parcel of real property purchased by the debtor. Hearing Transcript at 61.

v. The debtor does not have a will. Hearing Transcript at 50.

w. Neither the debtor nor DeAnna realized that DeAnna was not named on Plaintiff's Exhibit A, the Warranty Deed for Parcel 10, until the debtor filed bankruptcy. Hearing Transcript at 50.

x. At the time of purchase, Parcel 10 was a vacant lot on which DeAnna and the debtor intended build an office building to house the family business operations. Hearing Transcript at 18.

y. Approximately $15,000.00 was disbursed from the Business Account to pay for Parcel 10 in full. Hearing Transcript at 18–19, 64.

z. The funds used from the Business Account belonged to the debtor and DeAnna. Hearing Transcript at 64–65.

aa. In October 1973, DeAnna and the debtor borrowed $57,000 from Walker Bank & Trust Company to build a two-story office building on Parcel 10, from which Industrial Communications was to be and has been operated. The loan was backed by the SBA. Hearing Transcript at 21–22, 63.

bb. The Bank required that Parcel 10 serve as security for the loan. Hearing Transcript at 63.

cc. DeAnna wrote checks from the Business Account to pay off the loan. The loan was repaid early, and a Deed of Reconveyance, Defendant's Exhibit 2, was issued on November 24, 1980. Hearing Transcript at 22–23.

dd. Two other parcels of property near Parcel 10 were acquired after Parcel 10 was acquired, as reflected in Plaintiff's Exhibits B and C. DeAnna and the debtor are record title owners of those properties. Hearing Transcript at 24 & 33–34.

ee. Other parcels of real property were purchased by the debtor and DeAnna using funds from Business Account. Hearing Transcript at 26–27.

ff. DeAnna owns approximately a 49% interest in Industrial Communications. Hearing Transcript at 41.

gg. DeAnna has less than a 45% interest in other business ventures of the marriage. Hearing Transcript at 41.

hh. DeAnna has been involved in virtually all of the debtor's business ventures. Hearing Transcript at 41, 51.

ii. Industrial Communications does not pay rent for use of Parcel 10. Hearing Transcript at 43.

jj. DeAnna gave conflicting testimony as to whether she saw Plaintiff's Exhibit A at the time that Parcel 10 was purchased. Hearing Transcript at 34, 41–42.

kk. The debtor testified that he was sure that he had must have seen Plaintiff's Exhibit A, the Warranty Deed to Parcel 10, at the time that Parcel 10 was purchased. Hearing Transcript at 49. But, he also testified that he could not remember receiving possession of the Warranty Deed, because it came in an envelope from the seller-realtor with a lot of official looking stuff, and he did not review the documents in the envelope, but rather just placed them in a safety deposit box. Hearing Transcript at 52.

ll. DeAnna provided no indication as to why Plaintiff's Exhibit A is in the name of "David R. Williams, a married man," other than to state that: "I imagine that's what he told the Realtor." Hearing Transcript at 17.

## II. Conclusions of Law

To the extent that any of the Conclusions of Law contained below are considered to be Findings of Fact, they are incorporated above.

### 1. Controlling Law

 A debtor's interest in property is determined under applicable state law.

*Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). DeAnna summarily states in her post-trial Memorandum of Points and Authorities that she will only discuss the application of Utah law, but that, because she is a resident of Hawaii, Hawaii community property law should control. Since DeAnna has not provided any analysis under Hawaii law, the Court deems this argument to be waived. Furthermore, the Court applies Utah law because Parcel 10 is located in Utah, all contracts and deeds related thereto were executed in Utah, and DeAnna and the debtor were residents of Utah at the time all material transactions related to Parcel 10 occurred.

### 2. *DeAnna's Counterclaim*

DeAnna does not dispute that she is not listed on the Warranty Deed as an owner of Parcel 10. Rather, DeAnna has asserted a 1/2 ownership interest in Parcel 10 based on two legal theories. In her first claim for relief, DeAnna argues that her 1/2 ownership interest arises "pursuant to her marital property rights...." Counterclaim ¶ 13. In her second claim for relief. DeAnna requests that the Court impose an equitable lien on Parcel 10 due to the error of the realtor-grantor in failing to put her name on the Warranty Deed. Counterclaim ¶¶ 16–17.

### A. *First Claim for Relief—Marital Property Rights*

 DeAnna's first claim for relief is that she has a marital property right in Parcel 10. This claim of ownership is based on Utah divorce law which distributes property acquired during a marriage based on principles of equitable distribution. While the divorce law cited by DeAnna is accurate, it applies to situations in which a couple is seeking a divorce. It is not disputed, and it was testified to by DeAnna and the debtor, that she and the debtor have never been legally separated or divorced. Thus, this law, allowing division of marital assets regardless of legal title, has no application in this case. Equitable division of marital assets vests only upon the filing of a divorce case, and determinations related to title are governed by title 57 of the Utah Code. DeAnna has no interest in Parcel 10 under the provisions of title 57.

Related to this discussion is a defense not plead by DeAnna, claiming an elective share in Parcel 10 pursuant to Utah Code Ann. § 75–2–202. This argument, raised for the first time in DeAnna's post-trial memorandum, would have no application in this case, unless the debtor died. Moreover, even if DeAnna could claim an elective share under Utah law, Parcel 10 would not be property included in the debtor's augmented estate as defined under Utah Code Ann. § 75–2–203, unless the debtor died within two years from the date that Parcel 10 is transferred. *See* Utah Code Ann. § 75–2–205(3)(c).[4] Furthermore, if the debtor were to die within two years of the trustee's § 363(h) sale,

---

**4.** The presumption in Utah Code Ann. § 57–4a–4(h)(ii) that a recorded document executed by a person as an individual creates a presumption that joinder of a non-executing spouse for elective share purposes is unnecessary does not apply to this case. First, it is not clear what application § 57–4a–4 has under current Utah law, because elective share law was amended in 1998. The reference in § 57–4a–4 to elective share law has no relevance under the amended Utah law. Second,

even if that section still is pertinent, its application in this case crates no presumptions which aid in determining DeAnna's ownership of Parcel 10. That section merely states that if one of the grantors who executed Exhibit A signed as an individual when it was clear that they were married, the sale would be presumed to be a waiver of the grantor's spouse's elective share, thereby excluding the property in question from the grantor's augmented estate.

the issue of elective share is moot because DeAnna is the transferee of Parcel 10 pursuant to the September 14, 2000 auction which was authorized pursuant to an Order entered by the Court on September 15, 2000. *See* Utah Code Ann. § 75–2–210 (defining the personal liability of recipients of a transfer of property included within the augmented estate). At this auction, DeAnna purchased certain parcels of real property, including Parcel 10, from the estate pursuant to a credit bid. The issue of ownership raised herein is necessary only to allow a distribution pursuant to an "Order Approving Stipulation Re: Procedures for Credit Bid on Sale of Real Property" which was executed by the Court on February 6, 2001.

### B. *DeAnna' Second Claim for Relief–Equitable Lien*

DeAnna next claims that she has a 1/2 ownership interest in Parcel 10 based on principles of equity. DeAnna claims that the realtor-grantor erred in failing to place her name on Exhibit A, the Warranty Deed. Due to this mistake, and her contribution to the purchase of Parcel 10, DeAnna claims that she is entitled to an equitable lien on the property.[5]

Although it is plead in her Counterclaim, DeAnna has failed to provide any analysis of this argument in her post-trial brief. The Court, however, will address the issue below.

█ DeAnna's claim of equitable lien does not give her an ownership interest in Parcel 10. The Supreme Court has stated:

Liens, whether equitable or legal, are merely a means to the end of satisfying a claim for the recovery of money. In-

deed, equitable liens by their nature constitute substitute or compensatory relief rather than specific relief. An equitable lien does not "give the plaintiff the very thing to which he was entitled," [*Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)] (citations and internal quotation marks omitted); instead, it merely grants a plaintiff "a security interest in the property, which [the plaintiff] can then use to satisfy a money claim," usually a claim for unjust enrichment, 1 D. Dobbs, *Law of Remedies* § 4.3(3), p. 601 (2d ed.1993); *see also* Laycock, *The Scope and Significance of Restitution*, 67 Texas L.Rev. 1277, 1290 (1989) ("The equitable lien is a hybrid, granting a money judgment and securing its collection with a lien on the specific thing"). Commentators have warned not to view equitable liens as anything more than substitute relief:

"[T]he *form* of the remedy requires that [a] lien or charge should be established, and then enforced, and the amount due obtained by a sale total or partial of the fund, or by a sequestration of its rents, profits, and proceeds. These preliminary steps may, on a casual view, be misleading as to the nature of the remedy, and may cause it to appear to be something more than compensatory; but a closer view shows that all these steps are merely auxiliary, and that the *real* remedy, the final object of the proceeding, is the pecuniary recovery." 1 J. Pomeroy, *Equity Jurisprudence* § 112, p. 148 (5th ed.1941).

---

**5.** The Trustee has assumed that DeAnna is asserting a constructive trust, which is a separate remedy for fraud or unjust enrichment. Restatement, Restitution, §§ 160–61 (1936); *Fibre Form Corp. v. Slamin (In re Nova Tool & Engineering, Inc.)*, 228 B.R. 678, 682 (Bankr. N.D.Ind.1998). Since constructive trust was not plead by DeAnna or argued by her in her post-trial brief, the Court will not analyze whether DeAnna has a constructive trust on Parcel 10.

*See also Dobbs, supra,* at 601 (equitable lien foreclosure "results in only a monetary payment to the plaintiff and obviously does not carry with it the advantages of recovering specific property."). *Dept. of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 262–63, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (initial citations omitted) (emphasis in the original). Utah courts have concurred in this characterization of an equitable lien. *See, e.g., Osguthorpe v. Osguthorpe,* 804 P.2d 530 (Utah Ct.App.1990) (per curiam) ("an equitable lien, unlike a judgment, only gives the lienholder the right to collect the debt out of the charged property.") (citing *Citizens Bank v. Elks Bldg., N.V.,* 663 P.2d 56, 58 (Utah 1983)). Since no ownership interest can arise based on an equitable lien, § 363(h) does not apply inasmuch as DeAnna does not jointly own Parcel 10 with the debtor. *Citizens Bank,* 663 P.2d at 59; 53 C.J.S. Liens, § 3.b. Rather, if DeAnna has an equitable lien, she is entitled to a lien on any sale proceeds, or a credit for any amount that she has paid or will pay for Parcel 10 as part of her court-approved purchase of the property. The amount of her lien would be limited to 1/2 of the original $15,000 purchase price. That was her contribution toward the original purchase. An equitable lien does not allow DeAnna to payment of any appreciated value of Parcel 10.

 Utah recognizes the imposition of equitable liens based on "general principles of equity and justice" "only upon a showing of equitable facts warranting such an action." *Sandall v. Hoskins,* 104 Utah 50, 137 P.2d 819, 824 (1943). Such equitable facts must be proven by DeAnna, the party claiming an equitable lien, by clear and convincing evidence. *See Parks v. Zions First Nat'l Bank,* 673 P.2d 590, 596 (Utah 1983) (clear and convincing evidence necessary to prove existence of equitable

remedy of constructive trust). Unjust enrichment is generally considered to be grounds for imposition of an equitable lien.

 DeAnna would maintain, had she expressly argued the matter, that the following facts give rise to the imposition of an equitable lien. At the time that Parcel 10 was purchased. Industrial Communications was a sole-proprietorship in which she and the debtor were principals. Parcel 10 was purchased using funds from the Business Account, the separate account of Industrial Communications. The funds used from the Business Account belonged to the debtor and DeAnna, inasmuch as they jointly operated Industrial Communications and "split" its profits. The debtor told the realtor-grantor of Parcel 10 to put the title to the property in both his name and DeAnna's name. Neither DeAnna nor the debtor noticed the deficiency in title at the time of purchase, because they assumed that title was appropriate. Neither DeAnna nor the debtor knew of any alleged title defect until approximately twenty-two years later when the debtor filed bankruptcy. After the property was purchased, both DeAnna and the debtor became jointly liable for a debt incurred to improve Parcel 10, which was secured by Parcel 10. Industrial Communication's funds, which belonged jointly to DeAnna and the debtor, were used to payoff the mortgage debt. Finally, DeAnna and the debtor have jointly operated the business from the building built on Parcel 10.

Even if the Court were to find that such facts give rise to an equitable lien, DeAnna's claim is barred. Utah holds that the four-year statute of limitations set forth in Utah Code Ann. § 78–12–25(1) applies to equitable actions, and in particular to claims of equitable lien. *Brown v. Cleverly,* 93 Utah 54, 70 P.2d 881 (1937) (applying predecessor to Utah Code Ann. § 78–12–25); *see American Tierra v. City of*

*West Jordan*, 840 P.2d 757, 760 (Utah 1992) (recognizing general rule of application to equitable actions and the rule in *Brown*). Here, DeAnna and the debtor testified that they did not discover that the Warranty Deed to Parcel 10 omitted De-Anna's name until the debtor filed bankruptcy in December 1995. Despite learning of the alleged error in title in late 1995, DeAnna did not affirmatively raise an equitable lien claim until her Counterclaim was filed on March 2, 2000. Under these circumstances, DeAnna's claim would be barred under § 78–12–25(1) if the statute of limitations had been plead by the Trustee. *See* Utah Rules of Civil Procedure 8(c) (statute of limitations is a defense that must be specifically plead); *American Coal Co. v. Sandstrom*, 689 P.2d 1 (Utah 1984) (statute of limitations is waived if not plead), *overruled in part on other grounds. State v. South*, 924 P.2d 354 (Utah 1996); *Staker v. Huntington Cleveland Irrigation Co.*, 664 P.2d 1188 (Utah 1983) (same). The Trustee did, however, raise laches and estoppel as a defense to DeAnna's Counterclaim, and "relief in equity may yet be denied on the grounds of [DeAnna's] laches even when a statute of limitations is not a bar." *American Tierra*, 840 P.2d at 763. The Restatement states: "[I]n the absence of evidence of other circumstances the complaint normally is barred if the period of the statute of limitations applicable to actions at law in analogous situations would have run, beginning at the time when the facts were known . . . ." Restatement, Restitution, § 148, Comment on subsection (1), comment b. Based on this law, DeAnna's equitable lien action is barred. This conclusion is further supported by the fact that at the time that DeAnna formally raised her equitable lien claim, the Trustee was time-barred from avoiding it under §§ 546(a)(1)(B) and 544(a). *See Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 822 (10th Cir.1995) (court suggests, without deciding issue, that § 546(a) is jurisdictional and cannot be waived).

### C. *Other Non–Plead Claims Raised by DeAnna*

In her post-trial memorandum, DeAnna claims, with a two paragraph analysis, an ownership interest in Parcel 10 by way of adverse possession. This claim is deemed waived by the Court because it was not plead by DeAnna in her Counterclaim; raised in the Amended Pretrial Order; or otherwise adequately tried or argued.

### III. *Conclusion*

Accordingly, for the reasons set forth above, the Court concludes that DeAnna does not have an ownership interest in or an equitable lien on Parcel 10. Judgment shall be entered in favor of the Trustee.